471 So.2d 761 (1985)
Roland FUSILIER, Administrator of Estate of His Minor Child Keith Fusilier, Plaintiff-Appellee,
v.
NORTHBROOK EXCESS & SURPLUS INSURANCE COMPANY and Evangeline Parish School Board, Defendants-Appellants.
No. 84-184.
Court of Appeal of Louisiana, Third Circuit.
May 2, 1985.
Writ Denied June 28, 1985.
*762 Gary L. Keyser, Baton Rouge, for defendants-appellants.
C. Brent Coreil, Ville Platte, for plaintiff-appellee.
Before DOMENGEAUX, FORET, DOUCET, KNOLL and KING, JJ.
*763 KNOLL, Judge.
Evangeline Parish School Board (hereafter School Board) and its insurer, Northbrook Excess & Surplus Insurance Company, appeal an adverse judgment of $80,244.15 in favor of Roland Fusilier as administrator of the estate of his six year old son, Keith Fusilier, for personal injuries Keith received while playing on the School Board's property. The School Board contends on appeal that the trial court erred: (1) in failing to find it exempt from liability under LSA-R.S. 9:2791 and 9:2795; (2) in finding the School Board negligent; (3) in rejecting its claim of contributory negligence and assumption of the risk on the part of Keith Fusilier and his parents; and (4) in its finding that Keith proved by a preponderance of the evidence that he was injured at the place alleged. The School Board also specified that the trial court erred in finding Keith's hearing loss was permanent and was the result of medical treatment necessitated by his alleged injury on the School Board's property. However, this last specification of error was not briefed, therefore, it is considered abandoned. Rule 2-12.4, Uniform Rules, Courts of Appeal. We affirm, finding the School Board not exempt from liability, and the trial court's factual determinations not manifestly erroneous.

FACTS
On August 12, 1982, prior to the start of the 1982-83 school year, six year old Keith Fusilier, Eric Fusilier, his older brother, and Brian Southhill, a playmate, entered the School Board's property to watch the Mamou High School football team practice on the football field. It is undisputed that, although a large hurricane fence surrounds the football field, the School Board customarily leaves the school grounds open for public use. When the football practice ended, the three youths began playing tag along the perimeter of the football field. As Keith chased his companions, he ran through an area of uncut grass near one of the light poles which illuminates the football field, and punctured his ankle bone on a section of chain link fence which was hidden by the tall grass. It appears that a portion of the chain link fence which lines the football field had been knocked down and left in disrepair.
Keith's ankle wound was treated in the emergency room of Savoy Memorial Hospital immediately following the accident. Approximately ten days later Keith was readmitted to Savoy Memorial where he was hospitalized thirty days for a severe bacterial infection of the ankle joint and bone; while in the hospital, septicemia, a blood infection, developed as a result of the original ankle injury.
Keith suffered damage to the ankle's hyaline cartilage and may have also damaged the growth plate; arthritis may occur in the ankle as well as osteomyelitis; and, apparently, as a result of the prolonged use of Amakacin, an antibiotic, Keith has also suffered a permanent minor loss of hearing.

IMMUNITY
The School Board and its insurer contend that the district judge erred in finding LSA-R.S. 9:2791 and 9:2795 did not provide them with immunity from liability.
We find Keelen v. State of Louisiana, Department of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985), dispositive of this issue, and conclude that neither R.S. 9:2791 nor 9:2795 grants the School Board immunity from liability.
In Keelen, supra, the Court stated that, "There is nothing in either statute [R.S. 9:2791 or 9:2795] to suggest that in enacting these statutes, the legislature intended to extend immunity to owners of all property without limit." In particular the Court held:
"The use of the language (land and water areas) [in the statement of purpose of LSA-R.S. 9:2795 contained in 1975 La. Acts, No. 615, Sec 1] is suggestive of open and undeveloped expanses of property. Furthermore, the type of recreational activities enumerated in both statuteshunting, fishing, trapping, camping, *764 nature study, etc.can normally be accommodated only on large tracts or areas of natural and undeveloped lands located in thinly-populated rural or semi-rural locales. Specification of these types of activities suggests a policy that would encourage landowners to keep their property in a natural, open and environmentally wholesome state. We would stray from this goal were we to construe the statutes to grant a blanket immunity to landowners without regard to the characteristics of their property. Thus, we conclude that the legislature intended to confer immunity upon owners of undeveloped, nonresidential rural or semi-rural land areas. The size, naturalness and remoteness or insulation from populated areas all attribute to the categorization of property as rural or semi-rural.
* * * * * *
When the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors, then the statutes provide immunity. Conversely, when the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection." (Footnote omitted.) (Emphasis added.)
After analyzing the facts of the case sub judice in light of Keelen, it is clear that an injury on the edge of a football field located in the heart of a city is not the type of property to which R.S. 9:2791 and 9:2795 grant immunity from liability. Compare Thomas v. Jeane, 411 So.2d 744 (La.App. 3rd Cir.1982); Pratt v. State, 408 So.2d 336 (La.App. 3rd Cir.1981), writ denied, 412 So.2d 1098 (La.1982); Rushing v. State, 381 So.2d 1250 (La.App. 1st Cir.1980). Therefore the trial court was correct in its conclusion that R.S. 9:2791 and 9:2795 did not release the School Board and its insurer from liability.

NEGLIGENCE
The School Board next contends that the trial court erred in finding it negligent.
A landowner or occupier of land does not insure against the possibility of an accident, but he must act as a reasonable man in view of the probability of injury to others. Shelton v. Aetna Cas. & Sur. Co., 334 So.2d 406 (La.1976). In reviewing a trial court's findings of fact, an appellate court cannot overrule the trial court's evaluation of witnesses and determination of facts unless the record reveals the trial court's findings are entirely wrong. Manuel Truck & Equip. Co. v. B.G. Hooker Petroleum, 430 So.2d 1367 (La.App. 3rd Cir.1983), writ denied, 438 So.2d 568 (La. 1983); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
In its determination that the School Board was negligent in the maintenance of its property, the trial court stated in its well-written reasons for judgment:
"The Evangeline Parish School Board employs two custodians, Mr. Walter Shillow and Mr. Wilbert LaFleur, to maintain the premises on these school grounds. Throughout the summer of 1982, both custodians cut grass along the premises on a weekly basis. The principals of the school are responsible for inspection of the premises, and in seeing to it that the premises are kept in a safe condition at all times.
The Court finds that the Evangeline Parish School Board knew the children were going to be playing on the premises, and in fact, had been doing so for quite sometime. Therefore, the school board has a duty to either maintain the premises in a safe condition, or to provide adequate warning against a dangerous condition in the use of the premises. The Court finds that the school board breached its duty and as a result of the breach of this duty, Derwin Keith Fusilier was injured.
The custodians in charge of maintenance of the premises neglected to repair the fallen fence. Their knowledge of the fallen fence is apparent by the fact that all of the grass surrounding the accident site had been mowed, except for the accident site itself. The photographs introduced into evidence, which were taken *765 shortly after the accident, clearly indicate that the fence had fallen for quite sometime, and the custodians had allowed the grass to grow to a sufficient height as to completely hide the fallen fence.
Equipment was available to the custodians which would have allowed them to cut the grass close to the telephone post; however, they chose to cut around this area instead of repairing the fence. This negligence of the employees of the Evangeline Parish School Board is imputed to the school board under the theory of respondeat superior.
Representative [sic] of the Evangeline Parish School Board admitted knowing the children were going to be present and playing at the site of the accident. The principal of the school was charged with inspection of the premises. The custodians of the school were charged with maintenance of the premises. Therefore, the Court finds that the Evangeline Parish School Board willfully failed to warn against the dangerous propensity and failed to repair this dangerous propensity, knowing the children were going to be playing in this area."
Although it is questionable that the School Board's actions were wilful, we can not say that the trial court was manifestly erroneous in its finding that the School Board was negligent. Arceneaux, supra.

DEFENSES
The School Board contends that Keith and his parents were guilty of contributory negligence and assumption of the risk. The trial judge found Keith and his parents free of contributory negligence and assumption of risk.
Contributory negligence and assumption of the risk are questions of fact determined by the trier-of-fact. Simmons v. Beauregard Parish School Board, 315 So.2d 883 (La.App. 3rd Cir.1975), writ denied, 320 So.2d 207 (La.1975). The party relying on contributory negligence and assumption of the risk has the burden of proving them. Simmons, supra.
Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection. The standard of conduct to which Keith's parents must conform for their own protection is that of reasonable persons under like circumstances. Smolinski v. Taulli, 276 So.2d 286 (La.1973). In Smolinski the Supreme Court observed:
"Failure to take every precaution against every foreseeable risk or to use extra ordinary skill, caution, and foresight does not constitute negligence or contributory negligence..... A mother of small children is not required to chain them up or to act as their constant jailer in order to absolutely secure them from exposure to hazards negligently created or maintained by a tortfeasor. She is required only to use reasonable precautions, and her conduct in this regard is not negligent if by a common-sense test, it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances...."
The record clearly establishes that Keith and his brother requested and were granted permission to cross the street to watch the Mamou football team practice. Measured against the principles outlined in Smolinski the action of the parents in allowing Keith to enter the School Board's property was reasonable and does not fall below the standard of care required for their child's protection. The School Board has failed to carry its burden of proving contributory negligence on the parents' part.
In the assessment of contributory negligence a child is not held to the same degree of care as an adult. The test is whether the child, considering his age, background, and inherent intelligence, indulged in the gross disregard of his own safety in the face of known, understood, and perceived danger. Crowe v. State Farm Mutual Auto. Ins. Co., 416 So.2d 1376 (La.App. 3rd Cir.1982). We can not say that the trial court was erroneous in concluding that Keith's actions as a six *766 year old running through tall grass while playing tag did not constitute contributory negligence.
In specific reference to the defense of assumption of the risk, Dofflemyer v. Gilley, 384 So.2d 435 (La.1980), held:
"It is fundamental that, in order to assume a risk, one must knowingly and voluntarily encounter a risk which caused him harm. Plaintiff must understand and appreciate the risk involved and must accept the risk as well as the inherent possibility of danger because of the risk."
The School Board failed to produce any evidence whatsoever that Keith or Keith's parents knowingly and voluntarily encountered the risk which caused the harm. Therefore, we will not disturb the trial court's finding of this factual question.

CAUSE OF THE INJURY
The School Board argues that the Fusiliers failed to prove by a preponderance of the evidence the place where Keith was injured and what caused his ankle injury.
The trial court's determination of causation in a negligence action is a question of fact which is entitled to great weight and can not be disturbed unless it is clearly wrong. Charles v. Durand, 442 So.2d 916 (La.App. 3rd Cir.1983). In a civil action plaintiff has the burden to prove a controverted fact by a preponderance of the evidence. Proof by a preponderance of evidence is sufficient when the evidence, taken as a whole, shows that the fact sought to be proved is more probable than not. Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982); Jordan v. Travelers Ins. Co., 257 La. 995, 245 So.2d 151 (1971).
We can not say that the trial court was manifestly erroneous in its determination that a fallen portion of the hurricane fence hidden in the tall grass near the light pole was, more probably than not, the cause of Keith's injury; therefore, we will not disturb this finding.
For the foregoing reasons the judgment of the trial court is affirmed. All costs of this appeal are assessed against the appellants, Evangeline Parish School Board and Northbrook Excess & Surplus Insurance Company.
AFFIRMED.
DOMENGEAUX, Judge, dissenting.
I respectfully suggest that our Supreme Court in the Keelen case, referred to and relied upon by the majority opinion, committed error in its approach to, interpretation, and construction of La.R.S. 9:2791 and 2795.[1] The basic error lies in the major *767 premise of the High Court's analysis. The Keelen case bases its holding upon the proposition that La.R.S. 9:2795 "deals with the liability of one owning property used primarily for recreational purposes." (Emphasis added). Nowhere in the body of the statute nor in the act as passed by the legislature is there language which can lead to such an interpretation. Nothing in the statute, either expressly or impliedly, requires that the land be used primarily for recreational purposes in order for the landowner to be immune from tort liability if he allows the land to be used for recreational purposes.
Granted, the heading of West's LSA R.S. Title 9, Section 2795 states: "Limitation of liability of landowner of property used primarily for recreational purposes." (Emphasis added). However, the heading of a statute is not law. La. R.S. 1:13 states that when interpreting a statute: "Headings to sections, source notes, and cross references are given for the purposes of convenient reference and do not constitute part of the law." Obviously the addition of the word "primarily" in the heading of LSA R.S. 9:2795 was an editorial error.
I further suggest, with all due respect, that the Supreme Court's in para materia reading of La.R.S. 9:2791 and 2795 results in a more strictly circumscribed limitation of liability than the legislature intended. Certainly, a reading of La.R.S. 9:2791 alone would leave no doubt but that the legislature intended only to grant immunity to the owners of open and undeveloped expanses of property. However, the legislature's enactment of La.R.S. 9:2795 can only evince an intent on their part to expand the limitation of liability contained in La.R.S. 9:2791.
La.R.S. 9:2791 which was enacted by the legislature in 1964 protects landowners and occupiers against claims by persons who enter their property for "hunting, fishing, camping, hiking, sightseeing, or boating." La.R.S. 9:2795 which was enacted in 1975 expands the landowner's protection as it protects the landowner and occupier against a tort claim by persons who enter their property for "recreational purposes". La.R.S. 9:2795 A(3) sets out an exceptionally broad definition of "recreational purposes":
"`Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snow mobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites."
*768 This expansive definition prompts me to conclude that one doesn't necessarily use wilderness areas to swim, bike ride, horseback ride, or for summer or winter sports.
Additionally, with all due respect, I find it difficult to equate the words "land and water areas" with "open and undeveloped expanses of property." Had the legislature intended 9:2791 and 2795 to cover only "undeveloped, nonresidential rural or semi rural land areas" it would have expressly limited the statute.
In this case, it is to be remembered that at the time the accident occurred school was not in session. The three youths, Keith, Eric, and Brian, were not on the grounds of Mamou High School as participants in a school activity. The School Board's property in this case was available and open to the public, without charge, for recreational purposes. The public at large regularly uses the football field, track area, and tennis courts on a year round basis except when activities are specially scheduled for those areas. The gates of the high school grounds are never locked. In a rural community such as Mamou, the school grounds may provide the only recreational area open to the public.
Inasmuch as I feel that the Evangeline Parish School Board is immune from tort liability under the facts and circumstances of this case as indicated hereinabove, I would reverse the decision of the trial judge. In so doing I would conclude that the district judge fell in error when he ruled, as an alternative proposition, that the School Board "willfully" failed to warn of the dangerous condition imposed by the fallen fence. I feel also that the trial judge erred, also alternatively, when he said that this case fell under the doctrine of attractive nuisance.
I respectfully dissent.
FORET, Judge, concurring.
I concur in the result reached in the majority opinion. However, I feel constrained to express myself on matters which are not covered in the majority opinion.
LSA-R.S. 9:2791, enacted by Act # 248 of 1964, was adopted purely and simply to overrule the case of Daire v. Southern Farm Bureau Casualty Insurance Company, 143 So.2d 389 (La.App. 3 Cir.1962), writ denied (La., Oct. 9, 1962). Daire involved a suit for personal injuries arising out of an accident which occurred at a private fishing camp. The logic behind this legislative act was that private hunting camps, fishing camps, and other such premises which are used mostly seasonly, or otherwise intermittently, are generally not susceptible of the care and maintenance which we give to our homes, etc. Consequently, the legislature, in its wisdom, adopted a different degree of care required of the owners, lessees, etc. of camps, etc. (of which there are tens of thousands located along Louisiana's lakes and bayous), to the extent that the owner or custodian would be liable only for "deliberate and wilful or malicious injury to person or persons".
The case at hand is easily resolved without resort to any principle of tort law other than a pure, simple plain vanilla-type negligence case. The defendant school board is the owner-custodian of the premises involved. It certainly had knowledge that young children would be playing in this playground at various times and very frequently. The school board or its employees also knew or certainly should have known of the concealed length of downed hurricane fence, its custodians having cut the grass around the strip of hurricane fence and letting the grass grow through the fence which was down at the time of the accident. A plainer case of negligence is difficult to envision. This is a far cry from fishing-hunting camps which are visited rather infrequently by their owners-custodians. Therefore, I have no difficulty in concurring in the result arrived at by the majority.
The Louisiana Supreme Court, in Keelen v. State of Louisiana, Dept. of Culture, Recreation & Tourism, 463 So.2d 1287 (La. *769 1985), in discussing LSA-R.S. 9:2791 and 9:2795, states that:
"Thus, we conclude that the legislature intended to confer immunity upon owners of undeveloped, non-residential rural or semi-rural land areas.... When the injury-causing condition or instrumentality is of the type normally encountered in the true outdoors, then the statutes provide immunity. Conversely, when the instrumentality, whether found in an urban or rural locale, is of the type usually found in someone's backyard, then the statutes afford no protection."
With all due respect, I cannot agree with that interpretation of the statutes, and particularly as that interpretation would apply to 9:2791. I agree with the Keelen decision wholeheartedly as it applies to the facts of that case, but, the decision contains dangerous dictum, which, if followed to its extreme, would certainly emasculate the very purpose of the adoption of 9:2791, where it imposes a lesser degree of care on the owner of the premises described therein.
It is true that camps, etc. may be similar to structures found in someone's "backyard". But the simple fact is that they are not usually found in someone's backyard. On the contrary, hunting-fishing camps, boathouses, and such other similar structures are usually at some distance, even great distances, from the owner's domicile. They are usually not built according to the specifications that one would expect in his own home, nor are they usually maintained in a state of repair that one would require of his own home. They may be visited with some frequency, or only during the hunting or fishing seasons, and guests are usually allowed to hunt or fish, or whatever, gratuitously. Therefore, a different degree of care was devised by the legislature in 9:2791, in recognition of these realities. Keelen, by dicta, seems to unduly limit the intent and purpose of the statute.
KING, Judge, concurring.
I concur only in the result reached in the majority opinion.
I also agree with the views expressed in the concurring opinion of Judge Foret and the dissenting opinion of Judge Domengeaux.
The only reason that I agree with the result reached in the majority opinion is because of the recent interpretation by the Louisiana Supreme Court of LSA-R.S. 9:2791 and 9:2795 as set forth in the case of Keelen v. State of La., Dept. of Culture, Recreation and Tourism, 463 So.2d 1287 (La.1985). With all due respect, I do not agree with the interpretation of the application of those statutes by the Supreme Court as they have, in my opinion, unduly restricted and limited the intent and purpose of the statutes and have arbitrarily differentiated in the application of the statutes between undeveloped non-residential rural or semi-rural land and residential rural or urban land. Nowhere do those statutes make such a distinction between kinds and locations of property. A review of the legislative history of the statutes indicate, in my opinion, a clear intent by the Louisiana Legislature to confer immunity upon owners of all property, gratuitously used for recreational purposes, from those who are injured while using such property.
NOTES
[1] Those statutes provide:

"§ 2791. Liability of owner or occupant of property not used primarily for commercial recreational purposes
A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing or boating or to give warning of any hazardous conditions, use of, structure or activities on such premises to persons entering for such purposes. If such an owner, lessee or occupant give permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.
B. This Section does not exclude any liability which would otherwise exist for deliberate and willful or malicious injury to persons or property, nor does it create any liability where such liability does not now exist. Furthermore the provisions of this Section shall not apply when the premises are used principally for a commercial, recreational enterprise for profit; existing law governing such use is not changed by this Section.
C. The word `premises' as used in this Section includes lands, roads, waters, water courses, private ways and buildings, structures, machinery or equipment thereon."
"§ 2795. Limitation of liability of landowner of property used primarily for recreational purposes
A. As used in this Section:
(1) `Land' means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty.
(2) `Owner' means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) `Recreational purposes' includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, sledding, snowmobiling, snow skiing, summer and winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) `Charge' means the admission price of fee asked in return for permission to use lands.
(5) `Person' means individuals regardless of age.
B. Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(1) Extend any assurance that the premises are safe for any purposes.
(2) Constitute such person the legal status of an invitee or license to whom a duty of care is owed.
(3) Incur liability for any injury to person or property incurred by such person.
C. Unless otherwise agreed in writing, the provisions of Subsection B shall be deemed applicable to the duties and liability of an owner of land leased for recreational purposes to the federal government or any state or political subdivision thereof or private persons.
D. Nothing in this Section shall be construed to relieve any person using the land of another for recreational purposes from any obligation which he may have in the absence of this Act to exercise care in his use of such land and in his activities thereon, or from the legal consequence of failure to employ such care."