502 So.2d 593 (1987)
Martha McFARLAND, Individually and in Behalf of the Minor, Shane E. McFarland, Plaintiffs-Appellants,
v.
INDUSTRIAL HELICOPTERS, INC., et al., Defendants-Appellees.
No. 86-219.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1987.
*594 F. Clay Tillman, Jr. of Tillman, Fontenot, Etc., Leesville, for plaintiffs-appellants.
Bolen and Erwin, James A. Bolen, Jr. and Gay Coleman, Alexandria, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and KNOLL, JJ.
GUIDRY, Judge.
This action for personal injuries and medical expenses arose out of a pedestrianvehicle accident which occurred at approximately 1:10 p.m. on August 9, 1983, on Louisiana Highway 110 near Merryville, Louisiana. Injured in the accident was then two-year-old Shane McFarland, who apparently wandered onto the highway where he was struck by a trailer being towed by a truck. The truck, with trailer attached, was owned by Industrial Helicopters, Inc. and was being operated by Kevin Noel, a 17-year-old summer employee. At the time of the accident, as determined by separate judicial proceedings, coverage was provided to Industrial Helicopters by Angelina Casualty Company.
Defendants-appellees filed an answer and third party demand naming as third party defendant, Martha McFarland, the mother of the injured child. Immediately prior to the beginning of the jury trial, defendants-appellees dismissed their third party demand against Mrs. McFarland.
Following trial, the jury found both Kevin Noel and Martha McFarland at fault (i.e., joint tortfeasors) in causing the injuries to young Shane and assessed their percentage of fault at 10% and 90%, respectively. The jury further found plaintiffs' damages to be $7,000.00 in special damages (medical) and $10,000.00 in general damages. Pursuant to the jury verdict, the district judge rendered judgment in favor of plaintiffs and against defendants, Industrial Helicopters, Inc. and Angelina Casualty Company, in the sum of $1,700.00 together *595 with legal interest thereon from the date of judicial demand until paid. Costs were assessed one-half to plaintiffs and one-half to defendants.
Plaintiffs appealed alleging the following as error:
1. The trial court erred in reducing the jury's award of $17,000.00 to the sum of $1,700.00.
2. The trial court manifestly erred in assessing the percentage of fault as 90% to the plaintiff mother of the minor child and 10% to the driver of the defendant's truck.
3. The trier of fact manifestly erred in assessing the amount of damages in this case.
Defendants answered plaintiffs' appeal urging the following specifications of error:
1. The verdict rendered by the jury was contrary to the law and evidence adduced at trial as it pertains to the fault of the defendants.
2. The verdict rendered by the jury was contrary to the law and evidence adduced at trial as it pertains to the amount of damages.
3. The trial court erred in allocating the court costs one-half (½) to plaintiff and one-half (½) to defendants.
4. In the alternative, the judgment rendered by the trial judge accurately reflects the verdict rendered by the jury.
The issues raised on appeal require this court to determine the following:
1. Was the jury manifestly in error in finding the driver of the truck-trailer combination, Kevin Noel, at fault?
2. Was the jury manifestly in error in finding Martha McFarland, the injured baby's mother, at fault?
3. If neither of the above was manifest error, did the jury manifestly err in its allocation of percentages of fault?
4. Did the jury abuse its discretion in making an award of $10,000.00 for general damages?
5. Was the award of $7,000.00 in special damages correct?
6. Did the trial judge err in rendering his judgment based on the jury's verdict?
The portion of La. Hwy. 110 on which this accident took place runs approximately north and south from the town of Merryville (southern most) to where La. Hwy. 110 joins U.S. Hwy. 190. On the day of the accident, Mrs. Carol Richmond, an independent eyewitness, was returning from DeRidder to her home in Merryville via U.S. Hwy. 190 and subsequently La. Hwy. 110. At trial, she testified that shortly after turning off of U.S. Hwy. 190 onto La. Hwy. 110 she observed "something sitting in the middle of the road". Preceding her on Hwy. 110 were two eighteen wheel tractortrailers. Mrs. Richmond stated that, as the first truck approached the "something", it got up and ran off the roadway. At that point, she was able to identify the "thing" as a small child. The child ran back onto the road after the first truck passed and then left the roadway again when the second truck approached. Mrs. Richmond went on to relate that by the time she reached the spot where the baby had been in the road, he appeared to be heading towards a trailer park located some distance off the highway, but after passing the point where the child had been playing, she glanced in her rearview mirror and noticed him back out on the highway.
Being concerned about the child's safety, she decided to turn around and "go back and get him". While in the process of making her turn, she was passed by the vehicle which eventually struck Shane. Mrs. Richmond stated that, after completing her turn, she pulled out directly behind the Industrial Helicopter's truck-trailer. She maintained that at all times before and particularly after making her turn young Shane was clearly visible, standing on the shoulder of the roadway. She further stated that the truck did not swerve until just before the accident occurred.
Kevin Noel, the driver of the truck-trailer combination, was returning from Merryville to a cafe on U.S. Hwy. 190 where he was to rejoin the remainder of the Industrial Helicopters' crew on which he was working. *596 During his testimony, he made no statements inconsistent with the testimony of Mrs. Richmond. Kevin stated that shortly after crossing a bridge and rounding a curve he hit a bump in the road which caused him to become concerned about the load of five gallon cans on the flat bed trailer he was towing. At that point, which appears to have been about 600 feet from the point of impact, he looked into his rearview mirror to check the cans on the trailer and when he looked back at the roadway, "the little boy was right there". Upon seeing the child, Kevin said that he swerved the truck in an attempt to avoid hitting the child. Kevin maintained, throughout his testimony, that he never saw young Shane until just before the accident.
In Richardson v. Continental Ins. Co., 468 So.2d 675 (La.App. 3rd Cir.1985), writ denied, 474 So.2d 1304 (La.1985), a panel of this court stated:
"... Motorists traveling upon Louisiana's highways are charged with the duty to exercise reasonable care in the operation of their vehicles, which duty encompases the obligation to maintain proper control of their vehicle and a proper lookout for ... [persons and/or things], which by use of ordinary care and observation one should be able to see."
See also Andrus v. State, Dept. of Transp. and Dev., 476 So.2d 1077 (La.App. 3rd Cir. 1985) and Edwards v. State, Dept. of Trans. and Dev., 403 So.2d 109 (La.App. 3rd Cir.1981), writ denied, 407 So.2d 733 (La.1981).
The testimony of Mrs. Richmond establishes that the child, Shane McFarland, was standing beside the road in a position where he should have been seen by Kevin Noel, the driver of the offending vehicle, if Kevin had been maintaining a proper lookout. A motorist who sees or should see a child on or near the road is subject to a high degree of care and has a duty to anticipate that the child, possessed of limited judgment, might be unable to appreciate impending danger, is likely to be inattentive and might suddenly place himself in a position of peril. Lee v. Hartford, 411 So.2d 704 (La.App. 3rd Cir.1982), and cases therein cited. It is inescapable that the jury, in finding Kevin at fault in causing injury to the child, concluded that he was not maintaining a proper lookout and violated the high duty of care which he owed to young Shane. We agree with the jury's conclusions. For those reasons and the reasons which follow, we find Kevin Noel's negligence to be the major cause of the accident.
We now turn our attention to the jury's finding of fault on the part of Martha McFarland, Shane's mother. Mrs. McFarland testified that she and Shane had just moved in with her sister and her family on August 8, 1983, the day before the accident. The following morning she kept Shane in the trailer with her and her sister, Theresa, while they unpacked the McFarland's belongings and straightened up the house. During that time, Shane constantly entreated his mother to allow him to go outside and play with his three older cousins. Finally, after serving lunch to the four boys, Mrs. McFarland relented and placed Shane at the foot of the trailer steps to play with his cousins.
Martha McFarland stated that she and Theresa both checked on the children "[a]bout three or four times, five or six, just looking out ..." before they noticed anything amiss. Mrs. McFarland related that, even though she and her sister were cleaning up the lunch dishes, it was easy to check on the children because there was a big window in the living room and because the air conditioner was broken, the doors and windows were open.
Mrs. McFarland's testimony was completely corroborated by that of Mrs. Theresa Bland, her sister.
The jury found that Mrs. McFarland was guilty of contributory negligence in the accident and, under the doctrine of comparative negligence, assessed her fault at 90%. We find this conclusion to be manifestly erroneous.
*597 The case of Smith v. Trahan, 398 So.2d 572 (La.App. 1st Cir.1980), is similar to the present action. In the Smith case, five-year-old Noah Smith, Jr. was struck by a pickup truck when he pedaled his tricycle into the street in front of his home. The appellate court, in reversing a finding by the trial court of contributory negligence on the part of the parents, stated:
"The trial judge stated in his reasons for judgment that the parents of young Noah were guilty of contributory negligence in permitting their child to play unsupervised near a heavily travelled street. Both parents were outside near young Noah when the accident happened, the father painting a ladder in a neighbor's yard, and the mother across the street in another neighbor's yard. Neither of them were immediately supervising young Noah's activities, but both knew that he was riding his tricycle on the same side of the street as his home. In Smolinski v. Taulli, 276 So.2d 286 (La.1973), the court said:
Failure to take every precaution against every foreseeable risk or to use extra ordinary skill, caution, and foresight does not constitute negligence or contributory negligence. (Citations omitted.) A mother of small children is not required to chain them up or to act as their constant jailer in order to absolutely secure them from exposure to hazards negligently created or maintained by a tortfeasor. She is required only to use reasonable precautions, and her conduct in this regard is not negligent if, by a common-sense test, it is in accord with that of reasonably prudent persons faced with similar conditions and circumstances. (Citations omitted.)"
Under the circumstances of this case, we find no contributory negligence on the part of the parents."
Smith v. Trahan, supra, at 573, 574. See also the following cases where the court reached a similar result. Lewis v. Till, 413 So.2d 354 (La.App. 3rd Cir.1982), where an 18-month old child was killed by a pick-up truck two doors down from his home, and Guillot v. Fisherman's Paradise, Inc., 437 So.2d 840 (La.1983), where a two and onehalf year old boy drowned in a sewerage oxidation pond approximately 120 yards from the family camp near Toledo Bend Lake.
The three cases cited above all involve accidents which occurred prior to August 1, 1980, the date Louisiana's comparative negligence statute became effective. However, the principles enunciated therein are still viable today and were applied most recently by this court in Fusilier v. Northbrook Excess and Surplus, Inc., 471 So.2d 761 (La.App. 3rd Cir.1985), writ denied, 472 So.2d 918 (La.1985). In Fusilier, the accident involving six-year-old Keith took place on August 12, 1982. The trial court found the child's parents free of contributory negligence and, in affirming that finding, this court, at 471 So.2d 765, stated, "[t]he standard of conduct to which Keith's parents must conform for their own protection is that of reasonable persons under like circumstances." The court then used the same quote from Smolinski, supra, as did the First Circuit in Smith v. Trahan, supra.
Since the facts of Smith v. Trahan, supra, are so similar to the case at bar, we feel constrained to make some comparisons. We find the level of supervision in each case to be at least equal. Noah was playing by himself, unattended, while his parents were not even in the same yard as the boy. Shane was placed at the foot of the trailer steps to play with his three cousins (all older than he) while his mother and aunt were but a few feet away, cleaning up the lunch dishes. Noah was nearer danger, on a sidewalk adjacent to the street, and much more mobile (being on a tricycle) than Shane who was at least 50 yards from the nearest street and on foot. If anything, Shane was in a position of less danger and better supervised than Noah.
Accordingly we find the 90% fault attributed to Martha McFarland grossly out of proportion with the duty owed to young Shane by a supervising parent. This, however, is not to say that we find Mrs. McFarland *598 totally blameless. While both she and her sister, Theresa Bland, testified that they checked on the children playing just outside the trailer every three or four minutes, the facts indicate otherwise.
The Blands' trailer was at least 50 yards away from La. Hwy. 110 and Mrs. Carol Richmond testified that she saw Shane run back and forth from the middle of the highway to the shoulder several times before he was finally struck by the Industrial Helicopter vehicle. Common sense dictates that it would take a two-year-old child more than three or four minutes to traverse the fifty yards from the trailer to the road and to engage in the conduct noted by Mrs. Richmond.
We conclude, therefore, that Mrs. McFarland's conduct in supervising Shane did contribute to the injuries he received. However, we find that the most reasonable percentage of fault which could have been attributed to Martha McFarland under the law and facts of this case to be 20%.
Shane, of course, by reason of his tender years could not have been held to have contributed to his own injury. Fusilier v. Northbrook Excess and Surplus, Ins., supra; Smith v. Trahan, supra; Robertson v. Penn, 472 So.2d 927 (La.App. 1st Cir.1975), writ denied, 476 So.2d 353 (La.1985); Carter v. City Parish Government, Etc., 423 So.2d 1080 (La.1982), rehearing denied; Frank v. Great Am. Ins. Co., 196 So.2d 50 (La.App. 3rd Cir.1967), writ denied, 250 La. 739, 199 So.2d 180 (1967).
Before addressing the issue of damages, we digress to comment on how the preceeding fault determinations will affect quantum. Since Shane could not be held to have been at fault, any award to him individually, whether made personally or through his mother, as tutrix, cannot be reduced. The question then arises: From whom may Shane recover? La.C.C. art. 2324 states in pertinent part: "... [p]ersons whose concurring fault has caused injury, death or loss to another are ... answerable in solido; ... reserving to all parties their respective rights of indemnity and contribution". Accordingly, Shane McFarland, the fault free injured party, must recover 100% of his damages from either his mother or the defendants. He, of course, sought to recover only from the defendants.
At the time the accident took place, the article controlling the liability of debtors among themselves was La.C.C. art. 2103, which read:
"When two or more debtors are liable in solido, whether the obligation arises from a contract, a quasi-contract, an offense, or a quasi-offense, the debt shall be divided between them. If the obligation arises from a contract or a quasicontract, each debtor is liable for his virile portion. If the obligation arises from an offense or a quasi-offense, it shall be divided in proportion to each debtor's fault.
A defendant who is sued on an obligation which, if it exists, is solidary may seek to enforce contribution, if he is cast, against his solidary co-debtor by making him a third party defendant in the suit, as provided in Article[s] 1111 through 1116 of the Code of Civil Procedure, whether or not the third party defendant was sued by the plaintiff initially, and whether the defendant seeking to enforce contribution if he is cast admits or denies liability on the obligation sued on by the plaintiff."
Thus, defendants, Industrial Helicopters and Angelina Casualty Company, had a right of contribution against Mrs. McFarland for 20% of the damages awarded to plaintiff, Shane McFarland. Defendants, however, gave up this right when, prior to trial, they dismissed their third party demand against Mrs. McFarland. Therefore, defendants are liable to Shane McFarland for 100% of any damages awarded to him, individually, i.e., the general damage award.
The same result is not reached, however, in the case of the special damages award. Those damages, the medical bills incurred on Shane's behalf, were the responsibility of and recoverable by his mother, Martha McFarland. La.C.C. art. 2323 states:

*599 "When contributory negligence is applicable to a claim for damages, its effect shall be as follows: If a person suffers injury, death or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the claim for damages shall not thereby be defeated, but the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death or loss."
Accordingly, any amount of special damages recoverable by Martha McFarland must be reduced by 20%.
As a result of being struck by the truck-trailer, Shane suffered a compound fracture of the right femur, with a three centimeter laceration of the right lateral thigh and a closed head injury with loss of consciousness. He spent three weeks in traction with a "K-wire" (a rod) through both the leg and the bone and another month in a body spica cast. He was last seen by Dr. Drez, his treating physician, on August 15, 1984, and at that time exhibited no limp but a small external rotation of his right foot.
Considering the extent of the child's injuries, the amount of time he spent in traction and in a body cast and the possibility (albeit very slight) of some residual functional disability, we do not find that the jury abused its much discretion in awarding $10,000.00 in general damages. Accordingly, that award will not be disturbed. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081 (La.1983); Broussard v. Peltier, 479 So.2d 679 (La.App. 3rd Cir. 1985).
The jury also awarded $7,000.00 in special damages. At trial, only three medical bills totalling $6,338.05 were introduced into evidence. No evidence of future medical expenses was adduced. Accordingly, to conform with the evidence, the award of the jury must be reduced from $7,000.00 to $6,338.05.
As a general rule, the party cast in judgment is cast for all costs. Berzins v. Betts, 457 So.2d 282 (La.App. 3rd Cir.1984); LeBlanc v. Opt, Inc., 421 So.2d 984 (La. App. 3rd Cir.1982), writ denied, 427 So.2d 438 and 429 So.2d 132 (La.1982). La.C.C.P. art. 1920 states in part, "[t]he court may render judgment for costs, or any part thereof, against any party, as it may consider equitable". In the instant case, the degree of recovery by the plaintiff compared to the relief sought is extremely high. We found no fault on the part of the minor plaintiff and little fault on the part of his parent compared to that of the defendant driver. Therefore, we feel it is equitable, in this case, for the defendants to bear all costs at both the trial and the appellate level.
Accordingly, for the reasons stated above, we affirm the finding of fault on the part of both Kevin Noel and Martha McFarland; we amend the judgment in favor of Martha McFarland on behalf of the minor, Shane E. McFarland, and against defendants, Industrial Helicopters and Angelina Casualty Company, to the sum of $10,000.00, together with legal interest thereon from the date of judicial demand until paid; we amend the judgment in favor of Martha McFarland, individually, and against defendants to $5,070.44 ($6,338.05 less $1,267.61) together with legal interest thereon from the date of judicial demand until paid; we assess all costs at both the trial level and on appeal to the defendants.
AFFIRMED AS AMENDED.