555 So.2d 1341 (1990)
Clark HOLLOWAY
v.
STATE of Louisiana through DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Charles R. FACUNDUS
v.
STATE of Louisiana through DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Nos. 89-C-1276, 89-C-1304, 89-C-1310.
Supreme Court of Louisiana.
February 5, 1990.
Rehearing Denied March 8, 1990.
*1342 William J. Guste, Atty. Gen., Lawrence Durant, for applicant in No. 89-C-1276.
Oscar Schoenfelt, III, Edward Walters, Jr., Moore & Walters, John Dugas, for respondent in No. 89-C-1276.
John Dugas, for applicant in No. 89-C-1304.
William J. Guste, Atty. Gen., Oscar Shoenfelt, III, Edward Walters, Jr., Moore & Walters, Lawrence Durant, for respondent in No. 89-C-1304.
Edward Walters, Jr., Oscar Shoenfelt, III, Moore & Walters, for applicant in No. 89-C-1310.
William J. Guste, Jr., Atty. Gen., Lawrence Durant, John Dugas, for respondent in No. 89-C-1310.
MARCUS, Justice.
Charles R. Facundus and Clark Holloway filed separate suits against the State of Louisiana, through the Department of Transportation and Development (DOTD), to recover damages for injuries sustained by them in a one-vehicle accident. Wausau Insurance Company, the worker's compensation insurer, intervened in each suit seeking reimbursement of benefits and medical expenses paid by it to Facundus and Holloway. The suits were consolidated for trial.
The accident was reported at 6:04 P.M. on May 21, 1984. Facundus, who was driving, and Holloway,[1] his passenger, were travelling southbound on Louisiana High-way 37 (Greenwell Springs Road) in East Baton Rouge Parish. Facundus was driving a tractor trailer used for hauling heavy equipment.[2] The trailer was not loaded. Facundus testified that he was travelling at approximately forty miles per hour (mph) and was coming out of a right hand curve when he felt the right front tire of the cab leave the pavement. He took his foot off the accelerator and tried to steer the truck back onto the roadway. He next felt the right rear tire of the cab and then the trailer tires leave the pavement. He locked the brakes but could not stop. He then lost consciousness. The truck travelled 270 feet before the right front top corner of the cab hit a twenty-inch pine tree located just beyond the back slope of the ditch. The truck went another eighty-one feet, hitting a second tree, before coming to a stop in the ditch. Both Facundus and Holloway sustained serious injuries as a result of the accident.
After trial, the judge concluded that the primary cause of the accident was Facundus' negligence in driving off the road, but that some responsibility must lie with DOTD. He found Facundus sixty percent at fault and DOTD forty percent at fault. Judgment was rendered in favor of Facundus and against DOTD for a total of $160,113.47, to be reduced by his percentage of fault. Judgment was also rendered in favor of Holloway and against DOTD for a total of $165,953.55. The trial judge further rendered judgment in favor of Wausau and against Facundus in the amount of $14,673.00 (representing Wausau's award reduced by sixty percent) and against Holloway in the amount of $61,968.16. All parties appealed. The court of appeal, sitting in a panel of five judges, amended in part increasing Holloway's award by $57,305.96 to a total of $223,259.51 and, as amended, affirmed with two judges dissenting.[3] Upon all parties' applications to this *1343 court, we granted certiorari to determine the correctness of that decision.[4]
The issues presented are the (1) apportionment of fault, (2) adequacy of Holloway's award, and (3) reduction of Wausau's recovery against Facundus by sixty percent.
Plaintiffs contend that DOTD's negligence in failing to properly maintain Greenwell Springs Road, particularly the shoulder, was the sole cause of the accident. Therefore, liability hinges on La.Civ. Code art. 2315.[5] Liability under art. 2315 depends on whether the defendant has breached his duty to the plaintiff. DOTD's duty to travelers is to keep the state's roadways and their shoulders in a reasonably safe condition.[6]Manasco v. Poplus, 530 So.2d 548 (La.1988). Whether DOTD breached this duty, i.e., whether the roadway and shoulder at the scene of the accident were in an unreasonably dangerous condition, will depend on the particular facts and circumstances of each case. Manasco, supra; Myers v. State Farm Mut. Auto. Ins. Co., 493 So.2d 1170 (La.1986).
At the scene of the accident, Greenwell Springs Road is a two-lane undivided highway. This portion of the road is classified as a rural major collector route.[7] La.R.S. 48:191. The lanes are paved with asphalt and are twelve feet wide with one-to-two-foot shoulders. The shoulders consist of a mixture of shells and sand or clay with infrequent grassy areas. The roadside ditch has a fore slope of four to one meaning it slopes one unit for every four horizontal units. The ditch is thirty-four inches deep and has a back slope. The first tree which the Facundus vehicle hit was thirteen feet from the edge of the roadway. The speed limit was forty-five mph. The construction date of the highway is unrecorded. DOTD's first record of the road dates back to 1927 when the roadway was gravel. The lanes were later paved and, in 1958, were widened to ten feet. In 1976, the lanes were widened to the present twelve feet with striping at the eleven-foot mark. The project in 1976 included an overlay of the asphalt surface. William Hickey, a road design engineer with DOTD, testified that the plans called for a variable one foot minimum shoulder to start level with the pavement and then to gradually slope for drainage purposes.
Facundus testified that the initial drop from the asphalt to the shoulder felt "pretty severe." He stated that he rode on the shoulder for eighty feet trying to get his truck back onto the roadway until he reached a point where there was no shoulder and the truck went down into the ditch. However, Facundus later testified that he did not ride on the shoulder while trying to regain the roadway, but gradually went off into the ditch. He said that nothing was in the roadway to make him swerve and that he was familiar with the road because he had driven it several times. Facundus and his brother, who also testified, went to the scene two to three weeks after the accident. Based on this visit, Facundus said that, in general, the shoulder was in extremely bad condition and sharp drop-offs existed from the pavement to the shoulder. He testified that he found drop-offs of six to seven inches. His brother testified to drop-offs of three to four inches. Holloway testified that he remembered rounding the curve and that the truck quickly went *1344 into "a terrible lean" after the first tire left the pavement. The last thing he remembered was seeing a pine tree getting closer. Danny Hart, a state trooper who was at the scene immediately after the accident, testified that the tracks left by the truck went straight into the ditch. He saw no evidence that Facundus rode on the shoulder trying to regain the roadway. When asked to describe the scene, Trooper Hart said that the truck ran off the roadway into the ditch going farther and farther to the right until the vehicle struck the first tree. He further testified that this was a normal one-vehicle-off-roadway accident. The weather was clear, it was daylight, and the asphalt was properly striped. He stated that the shoulder and the edge of the pavement at the scene were similar throughout the length of Greenwell Springs Road. He examined the area for contributing factors and detected no shoulder wash-outs or drop-offs as suggested by Facundus and his brother. He further indicated that no defects were found in the roadway, and his investigation revealed no reason for Facundus to have left the roadway. A speed estimate was not calculated. State police photographs of the scene, which were taken before the accident was cleared, were introduced into evidence. They show a flat, unobstructed roadway free of defects. The shoulder is clearly visible. It varies in uniformity and gradually slopes into a shallow ditch. The area beyond the back slope of the ditch is tree-lined.
Dr. Edward J. Rhomberg, an expert for plaintiffs, visited the accident scene in November 1986. He stated that he measured some drop-offs and that he did not find a consistent one foot shoulder as the 1976 overlay plans had called for. Dr. Rhomberg concluded that the drop-offs and inadequate shoulder contributed to Facundus' accident by impairing his ability to get the vehicle back onto the roadway. In his opinion, a one-to-two-foot shoulder might have prevented the accident. He later acknowledged that Trooper Hart had testified that the tracks showed no attempts to get the truck back onto the pavement. Moreover, he testified that a ten-foot lane would be inadequate on Greenwell Springs Road because of heavy truck traffic. However, he would not concede that widening the lanes to twelve feet and sacrificing the shoulder was safer without seeing a cost benefit study. Concerning the ditch, Dr. Rhomberg testified that the ditch slope was within the recommendations of the American Association of State Highway and Transportation Officials (AASHTO).
Dr. Olin K. Dart, Jr., DOTD's expert, stated that, based on Holloway's and Trooper Hart's testimony, the shoulder played no part in the accident. Facundus was unable to regain the roadway because he was in the ditch, not because of shoulder conditions. Dr. Dart took measurements in June 1986 and found a two-foot shoulder with a minimal drop-off at the estimated point where the truck first left the pavement. He testified that AASHTO recognized that widening the travel lanes and reducing the shoulders is safer than retaining narrower traffic lanes. In 1977, AASHTO issued guidelines concerning shoulder widths and recommended a two-foot shoulder in the type of overlay project done in 1976. However, prior to the 1977 AASHTO recommendations, the only guideline was to use the best engineering judgment. In his judgment, the twelve-foot lanes on Greenwell Springs Road with a one foot shoulder are safer than a narrower roadway with a wider shoulder. Similarly, Mr. Hickey testified that AASHTO officially recognized the increased safety in widening the travel lanes and reducing the shoulder width. He noted that the overlay project on Greenwell Springs Road was completed pursuant to DOTD plans. To improve Greenwell Springs Road over and above what had already been done would mean major reconstruction and, most likely, relocation of the highway at a tremendous cost. Mr. Hickey also testified that Louisiana has approximately 16,000 miles of state roads of which around 14,200 are two-lane. While some meet modern standards, many do not. He stated that it would be impossible to update all old roads to comply with current AASHTO standards.
*1345 The characteristics of Greenwell Springs Road are not unique in Louisiana. Many roads are tree-lined with narrow shoulders and roadside ditches. The state cannot possibly bring all its roads up to modern standards. The failure of DOTD to reconstruct the state's highways to meet modern standards does not establish the existence of a hazardous defect. Manasco, supra. In 1976, no standards existed for overlay work except to use the best engineering judgment. The overlay work done on Greenwell Springs Road complied with DOTD plans. The decision to widen the lanes and reduce the shoulders has been recognized by AASHTO as appropriate highway maintenance. The testimony established that this made Greenwell Springs Road safer. Further, the slope of the ditch at the accident scene met AASHTO standards. Trooper Hart, the investigating officer, testified that he saw no defects in the roadway or shoulder. Facundus testified that the roadway was unobstructed. The state police photographs show an unobstructed roadway with a clearly visible shoulder sloping into a shallow ditch. Under these circumstances, we find that DOTD did not breach its duty to maintain this section of Greenwell Springs Road in a reasonably safe condition.
Moreover, plaintiffs have not shown that a drop-off from the pavement to the shoulder and the absence of a shoulder caused the accident. Trooper Hart testified that the tire tracks showed that the truck left the pavement and went straight into the ditch going farther and farther to the right until it struck the first tree. The tracks did not indicate that Facundus rode on the shoulder trying to regain the roadway. Further, Holloway testified that he remembered being in a terrible lean "pretty quick" after he felt the first tire go off the roadway. While Dr. Rhomberg felt that the drop-off and shoulder contributed to the accident by impairing Facundus' ability to get back onto the pavement, he conceded that other evidence had shown that Facundus did not try to regain the roadway. Facundus testified that he did not ride on the shoulder, but gradually went off into the ditch. Moreover, he was familiar with the road and admitted that he went off the roadway for no reason. Dr. Dart's opinion was that the shoulder played no role in the accident. We agree. The evidence shows that Facundus went straight into the ditch immediately after leaving the pavement. He was not able to get back onto the roadway because he was in the ditch, not because of a drop-off or the shoulder condition. The sole cause of the accident was Facundus' inability to maintain control of his vehicle. Neither a drop-off from the pavement nor the shoulder contributed to this accident.
Accordingly, we find that Facundus was solely at fault. The trial judge was clearly wrong in finding otherwise. The court of appeal erred in affirming that finding. The judgment against DOTD must be reversed. Therefore, we need not reach the other issues.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. Judgment is rendered in favor of the State of Louisiana, through the Department of Transportation and Development, and against Charles R. Facundus and Clark Holloway dismissing their suit at their cost. The intervention by Wausau Insurance Company is dismissed at its cost.
DENNIS, J., dissents with reasons.
NOTES
[1] Holloway was employed by Facundus Dozer and Equipment Company, a sole proprietorship owned by Facundus involved in land clearing, excavation, and preparation of dirt work-sites.
[2] Facundus described the vehicle as a 1973 GMC Astro cab-over-truck with a Lo-Boy Equipment trailer.
[3] 549 So.2d 859 (La.App. 1st Cir.1989).
[4] 551 So.2d 620 (La.1989).
[5] La.Civ.Code art. 2315 provides in pertinent part: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."
[6] "`Highway' means a public way for vehicular, mounted, and pedestrian traffic, including the entire area dedicated thereto and the bridges, culverts, structures, appurtenances, and features necessary to or associated with its purposes." La.R.S. 48:1(11). "`Roadway' means that portion of a highway improved, designed or ordinarily used for vehicular traffic, exclusive of the berm or shoulder." La.R.S. 48:1(20). "`Shoulder' means that portion of the highway contiguous with the roadway for accommodation for stopped vehicles, for emergency use and for lateral support of base and surface." La.R.S. 48:1(21).
[7] Testimony indicated that roads are classified as arterial or collector. An arterial road connects major traffic generators in larger towns while collector highways are intermediate roads connecting smaller towns to the arterials.