h KNOLL, Judge.
This appeal involves a medical malpractice claim against the Natchitoches Parish Health Unit (health unit) for failing to administer Immune Serum Globulin (ISG) to a mother and her daughter who were exposed to Hepatitis “A.” The trial court found the health unit negligent, and held the Louisiana Department of Health and Hospitals (LDHH), the state entity that operates the health unit, liable. The trial court awarded general damages of $10,000 to Sam Christophe, as natural tutor of his daughter, Heather Renee Christophe, $4,982.85 to Sam Christophe, individually, for Heather and Anastasia’s medical expenses, $5,000 to Sam Christophe, individually, for the loss of consortium of his wife, $1,000 to Sam Christophe, individually for the loss of consortium of his daughter, Heather, and general damages of $22,500 to Anastasia Christophe, Heather’s mother.
I2LDHH appeals, contending that the trial court erred: (1) in its conclusion that the medical review panel did not have sufficient evidence before it to make an informed decision; (2) in finding that Orealia Roque was the contact person or source of the Hepatitis “A” contracted by Heather and Anastasia Christophe; (3) by finding that the health unit personnel should have administered ISG; and (4) by awarding excessive damages. We affirm.
FACTS
The facts of this case involve repercussions from the illness of Dan Roque and his hospitalization in Shreveport, Louisiana for Hepatitis “A.” When Mr. Roque was hospitalized, his daughter, Orealia, stayed in the household of Sam and Anastasia Christophe. Shortly thereafter, medical personnel also diagnosed Orealia as suffering from Hepatitis “A.”
On March 13, 1991, Mrs. Christophe brought her daughter, Diedre, to their family pediatrician, Dr. Wilhelmina Wise, in fear that she had been exposed to the Hepatitis “A” virus when Orealia stayed in their home. Dr. Wise referred Mrs. Christophe and her children to the parish health unit, the only source of ISG treatment for exposure to the Hepatitis “A” virus.
From this point forward the parties dispute the facts. Since these facts will be elaborated upon in the opinion, we will only broadly sketch the parties’ contentions here. Mrs. Christophe contends that she told the health unit personnel that Orealia spent several nights in their home and that Orealia was diagnosed as suffering from Hepatitis “A.” To the contrary, the health unit contends that only Diedre was at risk because the Christophes said that Diedre was exposed to the virus when she spent the night in the Roque home. The Christophes re *292 turned to Dr. Wise’s office without receiving treatment. After Dr. Wise’s personnel telephoned the health unit, the [3Christophes then returned to the health unit. Ultimately, the health unit only gave the ISG injection to Diedre since, as it contends, the history that was given by Dr. Wise’s office and Mrs. Christophe indicated that Diedre was the only family member at risk. The Chris-tophes, Dr. Wise, and Dr. Wise’s staff disagree with the health unit’s appreciation of the facts.
On April 24,1991, Mrs. Christophe went to the emergency room of the Natchitoches Parish Hospital with flu-like symptoms that had begun several days before. She was treated conservatively and released. Two days later, Mrs. Christophe was hospitalized for nausea, vomiting, and a high fever; medical tests confirmed that she was suffering from Hepatitis “A.” Two days after that, Mrs. Christophe’s daughter, Heather, was also diagnosed as having Hepatitis “A” and was hospitalized with her mother. After approximately one week in the hospital, Mrs. Christophe and Heather were released. Mrs. Christophe’s recuperative period lasted about six months and Heather’s lasted approximately two months.
The trial court found that the health unit was negligent in taking the medical history of the Christophes and in ultimately deciding only to inoculate Diedre.
EFFECT OF MEDICAL REVIEW PANEL’S DECISION
LDHH contends that the trial court erred when it held that the medical review panel did not have sufficient evidence to support its opinion that the health unit did not commit medical malpractice. It argues that if insufficient evidence was presented to the medical review panel, such failing should be attributed to the Christophes.
La.R.S. 40:1299.47(H) provides:
Any report of the expert opinion reached by the medical review panel shall be admissible as evidence in any action subsequently brought by the claimant in a court of law, but such expert opinion shall not be conclusive and either party shall have the right to call, at his cost, any member of the medical review panel as a witness.
|4In Everett v. Goldman, 359 So.2d 1256 (La.1978), the Louisiana Supreme Court found that the sole duty of the medical review panel is to express its expert opinion(s) and that its findings were not binding on the litigants. Later, the Supreme Court reaffirmed this position in Derouen v. Kolb, 397 So.2d 791 (La.1981).
Since the jurisprudence equates the findings of the medical review panel to that of an expert, we find it appropriate to refer to the holdings of appellate courts regarding expert testimony. After weighing and evaluating medical testimony, the trial court may accept or reject the opinion expressed by the medical expert. The trial court should evaluate the expert testimony by the same rules which are applicable to other witnesses and the trial court is not bound by expert testimony. McCartney v. Columbia Heights Nursing Home, Inc., 25,710 (La.App. 2 Cir. 3/30/94); 634 So.2d 927. The effect and weight given expert testimony is within the broad discretion of the trial court. The importance placed upon such testimony is largely dependent upon the expert’s qualifications and the facts that form the basis of his opinion. Bolton v. Louisiana State University Med. Ctr., 601 So.2d 677 (La.App. 2 Cir.1992).
In the case sub judice, the trial court discounted the findings of the medical review panel since it found that Mrs. Christophe’s testimony was not presented to the panel for consideration. LDHH, with neither statutory nor jurisprudential authority, asserts that the failure to procure Mrs. Christophe’s testimony should be adversely imputed to the Christophes. We disagree.
La.R.S. 40:1299.47(D) through (F) reference the presentation of evidence to the medical review panel. Although La.R.S. 40:1299.47(D) provides that the respective parties shall promptly submit the evidence to be considered by the medical review panel in written form, all of the references to the submission of evidence are stated in permissive rather than mandatory form. The sole exception to this statement |sis La.R.S. *293 40:1299.47(F) which states that the medical review panel has “the right and duty to request and procure all necessary information.” Such a duty is not expressed with regard to the plaintiff. We find no requirement that the plaintiff has to even submit evidence to the medical review panel, unless the panel requests such evidence. Thus, we find nothing in the statute that supports LDHH’s assertion.
TRIAL COURT’S FACTUAL DETERMINATIONS
LDHH next contends that the trial court erred in its factual determination that Heather and Mrs. Christophe contracted the Hepatitis “A” virus from Orealia. It argues that Heather and Mrs. Christophe did not manifest the symptoms of the disease within the window of time accepted by the medical profession that would coincide with their contact with Orealia.
It is axiomatic that if an appellate court reverses a factual determination of the trial court, it must find that a reasonable factual basis does not exist for the finding of the trial court, and that the record establishes that the trial court’s finding is clearly wrong. Weatherford v. Commercial Union Ins. Co., 94-1793, 94-1927 (La. 2/20/95), 650 So.2d 763.
In the case sub judice, the record shows that the trial court was presented with expert medical testimony that established the usual time within which Hepatitis “A” will manifest itself after a party has been exposed to the virus. Although Heather and Mrs. Christophe’s manifestations of the disease may just barely exceed the generally accepted exposure time, we cannot say that the trial court was manifestly erroneous in its conclusion that Orealia was the viral source of the disease. Clearly, the parties were unable to conclusively establish the exact dates that Orealia stayed with the Chris-tophes, thus leaving the dates of their exposure as approximations. Similarly, Dr. Wise testified that even after Orealia left the Christophe household, the Hepatitis 18“A” virus could exist on household and bathroom surfaces in their home for several weeks. Moreover, when queried about other possible sources of the virus, LDHH conclusively stated that the only known eases of Hepatitis “A” prior to the Christophes’ were that of Orealia and her father. Based upon these observations we find that the trial court had a reasonable factual basis to conclude that Orealia was the source of the Christophes’ exposure and cannot say that such a factual determination was manifestly erroneous.
We next turn to the trial court’s conclusion that the health unit was mistaken in its appreciation of the ease history that brought the Christophes for treatment. Dr. Wise, the pediatrician who regularly treated the Christophes’ children, testified that Mrs. Christophe always accurately described the case histories of illnesses her children suffered. When she came for treatment, Dr. Wise stated that Mrs. Christophe told her that she and her family were exposed to Hepatitis “A” when Orealia stayed several nights in their home. Dr. Wise further stated that she and her nurse, Mrs. Leslie McAl-pin, related this history to the health unit when they referred the Christophes for immunization. Mrs. Christophe testified unequivocally that she told the health unit personnel that her household was exposed to Hepatitis “A” when Orealia spent several nights in their home.
Mrs. Bea Smith, one of the persons who met Mrs. Christophe at the health unit, testified that after talking with Mrs. Christophe, she determined that only Diedre had been in contact with Orealia within the last fourteen days. Mrs. Smith denied that Dr. Wise’s office told her that Diedre had spent several nights at the Christophe home. It was on this basis that only Diedre was given ISG.
After considering these diametrically opposing assertions, we find that the trial court was faced with a factual dispute that it had to resolve. In an instance such as |7this, witness demeanor and credibility are integral to the trial court’s determination. We find, in light of the record before us, no manifest error in the trial court’s resolution of this factual difference.
As an ancillary contention, LDHH further asserts that the trial court erred in its determination that the health unit should *294 have administered ISG to Heather and Mrs. Christophe. It argues that since the Chris-tophes presented themselves to the health unit more than two weeks after exposure to the Hepatitis “A” virus, standard medical protocol indicated that ISG was not called for. The time frame discussed above is critical to LDHH’s further contention. Since we found no manifest error in that determination of the trial court, we likewise conclude that the trial court was not manifestly erroneous in determining that the health unit was negligent in failing to administer ISG to Mrs. Christophe and Heather. A reasonable factual basis exists for the trial court’s holding that they were exposed to the virus within the time frame established in the medical protocol and thus ISG should have been administered.
GENERAL DAMAGES AND LOSS OF CONSORTIUM
LDHH next contends that the trial court awarded excessive general damages to Heather and Mrs. Christophe, and that its loss of consortium awards to Mr. Christophe were not justified.
The standard for an appellate court’s review of damages was well established in Reck v. Stevens, 373 So.2d 498 (La.1979) and was confirmed in Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, — U.S. -, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Suffice it to say that we will not disturb a trial court’s award of damages unless we find that the award constitutes an abuse of the trial court’s discretion.
IgThe trial court fully explored the record in its written reasons for judgment and de-tañed the particular injuries that each of the parties suffered. There is no need for us to restate or analyze the trial court’s written reasons since LDHH has not criticized any of its findings. Instead, we wül incorporate the trial court’s reasons for its damage award and append it as Appendix “A.” After carefully reviewing the record, we find that the trial court particularized the awards to the individuals and conclude that the trial court did not abuse its discretion in assessing the damages that the Christophes suffered.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to LDHH as provided by law.
AFFIRMED.
APPENDIX
SAM CHRISTOPHE, ET AL, v. STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF HEALTH AND HOSPITALS.
TENTH JUDICIAL DISTRICT COURT NATCHITOCHES PARISH, LOUISIANA
DOCKET NUMBER; 65,711
REASONS FOR JUDGMENT
This matter is before the court on a petition by Sam Christophe, his wife, Anastasia Christophe and their daughter, Heather Christophe, in which they seek money damages as a result of Anastasia and her daughter Heather having contracted Hepatitis A due to the fault of the defendants. Anastasia and her daughter, Heather seek damages for their medical expenses and pain and suffering as a result of having contracted the disease and Sam Christophe, the husband of Anastasia and the father of Heather, seeks damages for loss of consortium with his wife and daughter.
At the conclusion of this trial the court ruled from the bench that the defendants were at fault for withholding the necessary medication which would have prevented Mrs. Christophe and her daughter from contracting hepatitis. The court gave reasons for that finding in the minutes of the court on the date of the trial and then requested that counsel for both the plaintiffs and defendant submit briefs on the issue of quantum.
The evidence was abundantly clear that Mrs. Anastasia Christophe and her daughter, Heather suffered a great deal from the symptoms of Hepatitis. The record showed that Mrs. Anastasia Christophe began feeling sick on or about April 21, 1991 which would have been at the time of the onset of the *295 Hepatitis symptoms. Her abdominal cramping, nausea and fever got progressively worse and by April 26, 1991 she had to be admitted to the Natchitoches Parish Hospital as a result of dehydration, fever, vomiting, back discomfort and a general all over aching or malaise. The treating physician, Dr. Otis Bamum diagnosed her at time of admission as having acute Hepatitis A with vomiting, dehydration, generalized aching, fever, and leukopenia. On the date of her admission, Mrs. Christophe had a fever ranging from 100.8 degrees up to 104.1 degrees.
This elevated temperature continued throughout her entire period of hospitalization. It was the testimony of Mrs. Chris-tophe that she had absolutely no recollection of her first two days in the hospital since she was so acutely ill. The hospital records and the testimony of Mr. Christophe corroborate this testimony. It was the testimony of Mr. Christophe that he was running back and forth between his wife and daughter who were both continuously afflicted with serious nausea and vomiting in addition to having fever and being extremely ill. Mrs. Chris-tophe remained in the Natchitoches Parish Hospital until May 2,1991 at which time she returned to her home and continued to convalesce. For a period of approximately six months she gradually recovered. During that period of six months after being released from the hospital she suffered from the same symptoms as she had in the hospital but to a lesser degree. Mrs. Christophe has several small children in addition to her daughter, Heather, who was also a victim of Hepatitis. It was an extremely difficult six months for Mrs. Christophe because she was unable to care for her small children because of the Hepatitis symptoms and her general lack of energy.
During Mrs. Christophe’s recovery period Mr. Christophe was required to perform many duties and functions around the house which he ordinarily would not have had to do. Because of Mrs. Christophe’s lack of energy and the other Hepatitis symptoms she was unable to perform the household tasks and child care tasks which she normally performed which placed an additional burden on Mr. Christophe. Mr. and Mrs. Christophe, a youthful, attractive couple had their normal active sexual relationship rendered nonexistent for a large part of this recovery period of six months. These facts give rise to a loss of consortium claim on the part of Mr. Chris-tophe.
Heather Renee Christophe, the seven year-old daughter of Sam and Anastasia Christophe also had an acute case of Hepatitis. She was seven years old at the time she was hospitalized so she was placed in the room with her mother on April 28, 1991 in the Natchitoches Parish Hospital. At the time of her admission she had a fever of 104.0 degrees as well as nausea, vomiting and dehydration. Her dehydration had reached the point where she had to be placed on intravenous fluids to maintain adequate hydration. Heather also had to be treated with several medications including Dramamine and Tylenol. She was a very sick little girl as a result of the vomiting, nausea, fever and general malaise. She remained in the hospital until May 2, 1991 and missed approximately one week of school. She remained weak and lethargic for a period of approximately two months after her release from the hospital.
The court has reviewed the various cases cited by counsel for both parties on quantum of damages for other Hepatitis eases and those eases have been considered in fixing the award of damages in this case. As always happens, however, each case varies in its particulars and must be quantified in keeping with the suffering undergone by the plaintiff in each ease. Mrs. Hackman, in Hackman v. Southern Farm Bureau Insurance Company was awarded Fifteen Thousand ($15,000.00) dollars for a less severe case of Hepatitis in 1975 than Mrs. Chris-tophe suffered in 1991. The duration and severity of the symptoms suffered by Mrs. Anastasia Christophe lead the court to conclude that an award of Twenty-two thousand, five hundred ($22,500.00) dollars would be appropriate for the pain and suffering which she had to undergo in this case and that will be the general damage award of the court for Mrs. Christophe.
*296 Heather Renee Christophe, the seven year-old daughter, was as acutely ill as her mother but for a shorter period of time. Heather went into the hospital two days later than her mother and was discharged on the same date and then made a full recovery within approximately two months whereas it took her mother approximately six months to recover. The court concludes that the duration and severity of the symptoms suffered by seven year old Heather, justifies a general damage award in the amount of Ten thousand ($10,000.00) dollars and that will be the judgment of the court for her general damages.
Turning now to the loss of consortium claim urged by Mr. Christophe for the loss of consortium with both his wife and daughter the court notes that Mr. Christophe suffered a very substantial loss of the performance of material services from his wife. Mr. and Mrs. Christophe have a number of small children and Mrs. Christophe’s illness prevented her from performing the childcare and household duties which she normally performed. Mr. Christophe missed a great deal of work in his vocation as a carpenter so that he could perform these services for his family. The quality of his wife’s society and companionship, of course, was greatly reduced as a result of her illness which continued for a period of approximately six months and their sexual relationship was virtually rendered nonexistent during this period. As a result of these facts, the court concludes that an award of Five thousand ($5,000.00) dollars for loss of consortium to Mr. Chris-tophe would be appropriate for the loss of consortium claim with his wife. As to the loss of consortium claim with his daughter, Mr. Christophe suffered a reduced quality of society and companionship with his daughter and certainly his daughter could not show as much love and affection for him because she felt so bad during this approximately two month period. However, Heather is a seven year old and, of course, did not perform a great deal of material services and certainly did not provide any support. As a result of these facts, the court concludes that a consortium award to Mr. Christophe in the amount of One thousand ($1,000.00) dollars for the loss of consortium with Heather would be appropriate in this case and there will be judgment in that amount.
In addition to the above damages there will be judgment in favor of the plaintiffs for all medical expenses documented in the record, including the bill of the Natchitoches Parish Hospital in the amount of Two thousand, Nine hundred sixty-five and 50/100 ($2,965.50) dollars for the treatment of Anastasia Christophe and the bill of the Natchi-toches Parish Hospital in the amount of Two thousand, seventeen and 35/100 ($2,017.35) dollars for the treatment of Heather Renee Christophe.
Judgment in accordance with these reasons will be signed upon presentation.
THUS DONE AND SIGNED at Natchi-toches, Louisiana on this, the 20th day of October, 1994.
/S/ John B. Whitaker JOHN B. WHITAKER, DISTRICT JUDGE
COPY TO:
Mr. Edwin Dunahoe
Mr. William R. Carruth, Jr.