712 So.2d 62 (1998)
Michelle AUCOIN, et al.
v.
STATE of Louisiana Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT.
Nos. 97-C-1938, 97-C-1967.
Supreme Court of Louisiana.
April 24, 1998.
Rehearing Denied June 5, 1998.
*63 Paul H. Due, Due, Caballero, Price & Guidry, G. Stephen Covert, Donald W. Price, Baton Rouge, for Applicant in No. 97-C-1967 and Respondent in No. 97-C-1938.
Stacey A. Moak, Richard P. Ieyoub, Attorney General, Robert C. Funderburk, Jr., John C. Young, Lawrence A. Durant, Baton Rouge, for Respondent in No. 97-C-1967 and Applicant in No. 97-c-1938.
KNOLL, Justice.[*]
The State of Louisiana, through the Department of Transportation and Development (DOTD), sought writs from a ruling in the Court of Appeal, First Circuit, which affirmed the trial court's judgment finding DOTD 15% at fault in this personal injury case. Plaintiffs also sought writs, asserting that the court of appeal erred in reducing special damages awarded for payment of the minor's medical expenses incurred as a result of her injury in the single car collision. For the following reasons, we affirm the judgment assigning 15% fault to DOTD, finding no manifest error; we reverse the court of appeal's reduction of special damages, finding that judgment contrary to the rule under the applicable version of La.Civ.Code art. 2324(B).

*64 FACTS
On July 29, 1990, plaintiff, Michelle Aucoin, (Aucoin) was proceeding southbound on Greenwell Springs Road, Highway 37, with her one-year-old daughter Amber, who was strapped in her car seat. A dog ran into the road and Aucoin swerved right to avoid hitting the dog. When Aucoin swerved, her car's outer wheels ran outside the white fog line, onto a narrow shoulder approximately one foot wide, and down a steeply-sloped ditch. In less than two seconds from the time her wheels first left the road, Aucoin's car had traveled 123 feet before crashing into a tree that was growing on the back slope of the ditch in DOTD's right of way, eight and a half feet from the edge of the fog line.
As a result of the accident, Aucoin suffered injuries to her arm and Amber suffered severe closed head injuries requiring extensive treatment. Amber was hospitalized for three weeks and was diagnosed with a left frontal parietal hemorrhagic contusion complex, a left frontal fracture, a left subgaleal hematoma and a right femur fracture. As a consequence of the injuries to her head, Amber required surgery to implant a cerebralperitoneal shunt.
The trial court found that Aucoin suffered damages in the amount of $1,247.08 for past medical expenses and $90,000 for loss of consortium; Amber suffered damages in the amount of $85,294.18 for past medical expenses, $100,000 for future medical expenses, and $900,000 in general damages, plus legal interest. The trial court assigned fault: 85% to Aucoin, 15% to DOTD. Applying La.Civ. Code art. 2324(B), the trial court held DOTD liable for a total of $13,687.06 in favor of Aucoin, and solidarily liable for $542,647.09 in favor of Amber. The trial court, in its written reasons for judgment, determined that the accident was primarily caused by Aucoin, who failed to maintain control of her vehicle when faced with a sudden emergency. The court found that the "combination of shoulder width, slope angle and horizontal clearance created an unreasonable risk" of harm, and that DOTD had negligently failed to maintain the highway in accord with reasonable standards and failed to prioritize proper maintenance.
The court of appeal amended the judgment, reducing the past and future medical expenses awarded Amber from $185,294.18 to $27,794.13, a reduction of $157,500.05. Concluding that medical bills incurred by a minor are the responsibility of a parent, the court of appeal reduced the medical damage award by the 85% fault attributable to her mother. In all other respects, the judgment of the trial court was affirmed.

LAW AND DISCUSSION
DOTD has urged this court to hold them not liable based on this court's holdings in Holloway v. DOTD, 555 So.2d 1341 (La.1990) and Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170 (La.1986). In Holloway, the driver lost control of his vehicle for no apparent reason. His wheels dropped onto the shoulder and rolled onto an AASHTO (American Association of State Highway and Transportation Officials) conforming ditch (4:1 slope) before hitting a pine tree beyond the back slope of the ditch. The Holloway court found DOTD not liable because plaintiffs had not proven that the conditions of the roadway had caused the accident. Myers addressed DOTD's liability following a 1977 lane widening project undertaken to conform the roadway to the eleven-foot standard then applicable. This court determined that DOTD need not comply with all modern standards, which would have been a task this court considered physically and financially impossible. The Myers court held that DOTD's failure to reconstruct the state's highways to meet modern standards did not establish the existence of a hazardous defect. Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170, 1173 (La.1986).
We reaffirm the holdings in both cases. Nevertheless, we do not find persuasive DOTD's assertion that it should be shielded from liability based on those cases because we find them distinguishable. In the case sub judice, Aucoin has not suggested that Greenwell Springs Road be reconstructed to meet modern standards, contrary to the holding in Myers. Nor was the side slope of the roadway recoverable, as in Holloway. The issue under consideration in this case *65 requires a determination of whether, under the specific facts of this case, the trial court erred in finding the roadway in question unreasonably dangerous.
DOTD owes a duty to maintain its right of way in a condition that it does not present an unreasonable risk of harm. Oster v. DOTD, 582 So.2d 1285 (La.1991). Breach of duty and reasonableness of the risk depend on the facts and circumstances of each case. Manasco v. Poplus, 530 So.2d 548 (La.1988); Hunter v. DOTD, 620 So.2d 1149 (La.1993). The standard of review is manifest error in cases where unreasonable risk of harm is at issue. Reed v. Wal-Mart, Inc., 97-1174 (La.3/4/98), 708 So.2d 362. The trial court's findings are reversible only when there is no reasonable basis for the conclusions, or they are clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987).
In this case, the trial court found that the site of the accident on Greenwell Springs Road was unreasonably dangerous because of the combination of dangerous defects that were allowed to accumulate by DOTD. These defects included a "drop off" shoulder, a nonrecoverable sloping, and limited horizontal clearance.[1] We find the record supports the trial court's conclusions, and they are not clearly wrong.
Highway 37, or Greenwell Springs Road, is a two-lane highway that has been in existence since before 1927. Its history has been documented in Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170 (La.1986) and Holloway v. DOTD, 555 So.2d 1341 (La.1990). Briefly stated, its lanes were widened in 1958 and 1977, and it received an overlay of asphalt in 1988.
Over the years, traffic increased dramatically on the portion of Greenwell Springs Road involved in the instant accident. Traffic volume correlates directly with highway deficiency, according to Tom Buckley, DOTD's district traffic operations engineer. The evidence varied as to exact traffic volume, but by all accounts it was, at the time of the accident, in excess of 6000 per day. Another state highway, Highway 16, had undergone reconstruction to four lanes even though its traffic was only half that volume.[2] DOTD's district construction engineer, Gordon Nelson, conceded that Greenwell Springs Road was the only highway in his district that had such a high traffic count with such an acute situation for such a long period of time. According to his deposition, Trooper James Bentley considered the section of Greenwell Springs Road where the accident took place to be very dangerous, and that it had that reputation among his colleagues. Considering all the relevant factors, DOTD's chief design engineer, William Hickey, was unable to name any roadway that was more dangerous than Greenwell Springs Road. Lacking federal assistance to increase lanes to four, DOTD overlaid the existing roadway with asphalt to make the paved portion of the roadway safer.
The 1988 overlay project plans also called for an off roadway gradation. The drainage ditch paralleling the shoulder was to have a slope of 3:1. That proportion matched every three units of horizontal distance with a vertical drop of one unit. At the point of impact, the slope was 1.43:1, approximately twice as steep. According to Jim Clary, plaintiff's highway design expert, the increase in slope steepness was evidence that DOTD had not properly executed its own maintenance standards. He noted that DOTD's 1986 Maintenance Standards Manual specified that shoulders were to be restored to their original grade and cross slope, which in this case was 3:1 as defined by the overlay plans. The failure to maintain the original slope was significant. According to mechanical engineer and accident reconstructionist Andrew McPhate, plaintiff's expert, *66 the steeper the slope, the greater the force of gravity pulling a vehicle into a ditch, and the less likelihood there would be that a vehicle could recover and return safely to the roadway.
In point of fact, even the 3:1 slope called for in the plans may not have rectified plaintiff's situation. Experts on both sides agreed that a slope steeper than 4:1 was considered non-recoverable. That is, once a vehicle had begun its descent, it would not be expected to be able to return safely to the paved portion of the roadway. Thus, it was virtually inevitable that once Aucoin's car had left the shoulder, she would crash into any objects present within DOTD's right of way. We find the failure to maintain a reasonably safe slope was the significant factor which caused the accident.
The trial court also found that the limited horizontal clearance contributed to the unreasonable danger of the section of Greenwell Springs Road at issue. A clearance of thirty feet beyond the fog line was AASHTO's national standard as early as 1941. According to plaintiff's highway design expert, Jim Clary, AASHTO guidelines were in operation at DOTD when he worked for them in 1956. No one testified that DOTD did not know of such guidelines advance of that time. In fact, it behooved DOTD to be aware of any AASHTO guidelines because federal aid was tied to the utilization of those guidelines in the construction of new roads and reconstruction of old ones. Since 1968, the Louisiana state legislature has required DOTD to maintain all highways in conformity with AASHTO standards to the extent possible:
The office of the Department of Transportation and Development shall adopt minimum safety standards with respect to highway and bridge design, construction, and maintenance. These standards shall correlate with and, so far as possible, conform to the system then current as approved by the American Association of State Highway and Transportation Officials. Hereafter, the state highway system shall conform to such safety standards.
La.R.S. 48:35(A). While failure to adhere to AASHTO standards may not in itself attach liability, whether DOTD has conformed to those standards is a relevant factor in determining the ultimate issue of whether the roadway is unreasonably dangerous. Dill v. DOTD, 545 So.2d 994 (La.1989).
DOTD's project development engineer, Richard Savoie, testified that the presence of a nonrecoverable slope, as in this case, was a factor in determining how much horizontal clearance was needed to prevent collision with fixed objects. Yet DOTD has neither maintained a conforming horizontal clearance nor a 4:1 recoverable slope, which has been the AASHTO standard since at least 1941. In addition, the shoulder at the site of the accident was only about one foot wide. According to Andrew McPhate, plaintiff's expert in mechanical engineering, vehicle dynamics and accident reconstruction, the narrowness of the shoulder meant that Aucoin could have avoided the ditch only if she had begun her recovery maneuver before actually leaving the roadway. DOTD's civil engineering expert, Neilon Rowan, conceded that a shoulder would need to be six feet wide to stop a vehicle without being in the lane, and the six-foot standard had been articulated as early as 1954.
DOTD was fully aware of the substandard condition of the section of Greenwell Springs Road where the accident occurred. While in 1986 the Myers court noted that the physical characteristics of the road were not unique, the facts in this case reveal that by 1990, DOTD could not name a more dangerous road given the combination of dangerous conditions.
We granted DOTD's writ out of concern that DOTD was found liable because it failed to bring an old highway up to current standards. However, after carefully studying the facts peculiar to this case, we agree with the lower courts and find the area where the accident happened unreasonably dangerous. While the roadway in the present case was in good condition, the shoulders were substandard. Should a driver, such as Aucoin, inadvertently travel off the shoulder, the vehicle becomes trapped in a non-recoverable slope and does not have a clear recovery zone. Under these dangerous conditions, DOTD cannot escape liability by claiming that it has *67 no duty to bring this old highway up to current standards.
The combination of more than one dangerous condition was allowed to accumulate by DOTD, rendering this off roadway area unreasonably dangerous to the motoring public. Under these circumstances, DOTD does have a duty to maintain this off roadway area so it does not pose an unreasonably dangerous condition to the motoring public, notwithstanding that the roadway at issue is an old highway.

RETROACTIVITY OF AMENDMENT TO ARTICLE 2324(B)
Under the comparative fault provision of La.Civ.Code art. 2323, the trial court found DOTD 15% at fault and Aucoin 85% at fault. The minor, Amber, a guest passenger, was found free of fault. Pursuant to La.Civ.Code art. 2324(B) as it existed at the time of the accident, DOTD would be solidarily liable for 50% of Amber's damages regardless of Aucoin's ability to pay.[3] In 1996, La.Civ.Code 2324(B) was amended and resulted in the adoption of pure comparative fault.[4] Under the amended version, DOTD would be liable only for the degree of fault found. Before addressing the award of medical expenses, it is necessary to discuss the issue of whether the 1996 amendment to article 2324(B) should be retroactively applied.
Act 3 amended both La.Civ.Code art. 2323 and 2324 in the First Extraordinary Session of 1996. This court has already determined that amended article 2323 was merely procedural legislation. Therefore, it was to be applied retroactively. Keith v. United States Fidelity & Guaranty Company, 96-2075 (La.5/9/97), 694 So.2d 180. However, as noted by Chief Justice Calogero in his concurrence, Keith was limited to that specific issue. Whether article 2324(B) was also to be applied retroactively has not been addressed by this court.
Laws which are procedural or interpretive may apply retroactively, but "[i]n the absence of contrary legislative expression, substantive laws apply prospectively only." La.Civ.Code art. 6. Laws establishing new rules, rights, and duties, or changing existing ones are substantive. Laws which merely establish the meaning the statute had from the time of its enactment are interpretive. Keith at 183; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d 809, 817 (La.1992). Before 1996, article 2324(B) held defendants liable "solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages." The 1996 amended article revoked solidarity for nonconspiratorial acts and expressed defendant's liability instead as a "joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person...." That shift from solidary liability to joint and several obligation altered the existing rule. Moreover, since the amendment resulted in changing the amount of damages recoverable, the change was clearly substantive. Socorro v. City of New Orleans, 579 So.2d 931, 944 (La.1991). As such, the amendment can have only prospective application.[5] La.Civ.Code art. 6. Therefore, the applicable article 2324(B) was that which existed at the time of the accident. Under the relevant provision, DOTD is solidarily liable *68 for 50% of Amber's damages, including medical expenses.

REDUCTION OF MINOR'S MEDICAL DAMAGES
A defendant is liable for damages occasioned by his fault. La.Civ.Code art. 2315. The public policy behind this tort recovery is to make a victim whole. Boudreaux v. DOTD, 96-0137 (La.App. 1 Cir. 2/14/97), 690 So.2d 114; LeBlanc v. Mercedes-Benz of North America, Inc., 93-907 (La.App. 3 Cir. 3/2/94), 633 So.2d 399, writ denied, 94-1225 (La.7/1/94), 639 So.2d 1169; Capone v. King, 467 So.2d 574 (La.App. 5 Cir.), writ denied, 468 So.2d 1203 (La.1985); Quinlan v. Liberty Bank & Trust Co., 575 So.2d 336 (La.1990) (indemnity contract). Therefore, when a minor is injured, damages for the injury belong to the minor child. Coleman v. Audubon Insurance Co., 572 So.2d 352 (La.App. 1 Cir.1990), writ denied, 576 So.2d 31 (La. 1991); Matthews v. State Farm Fire & Casualty Insurance, 550 So.2d 936 (La.App. 3 Cir.1989); Butler v. State Farm Mutual Automobile Insurance Co., 195 So.2d 314 (La. App. 4 Cir.1967); Lane v. Mud Supply Co., Inc., 111 So.2d 173 (La.App. 5 Cir.1959). Damages include recovery of medical expenses as well as general damages. Rowe v. State Farm Mutual Automobile Insurance Co., 95-669 (La.App. 3 Cir.3/6/96), 670 So.2d 718, writ denied, 96-0824 (La.5/17/96), 673 So.2d 611; Matthews v. State Farm Fire & Casualty Insurance, 550 So.2d 936 (La. App. 3 Cir.1989).
The court of appeal determined: "Special damages in the form of medical bills incurred by a minor are the responsibility of and recoverable by his parent, and are subject to a reduction by the degree of the parent's negligence in an accident." Aucoin v. DOTD, 96-1047 (La.App. 1 Cir. 6/20/97), 709 So.2d 1087 (table), at 19 (case not designated for publication), citing to McFarland v. Industrial Helicopters, Inc., 502 So.2d 593, 598-99 (La.App. 3 Cir.1987). In so concluding, the court of appeal misinterpreted McFarland and confused parental obligation with a tortfeasor's responsibility under article 2324(B) to attempt to make the victim whole. McFarland did not reduce recovery proportional to the parent's allocation of fault premised on a parental responsibility to pay, as the court of appeal suggested. Instead, a reduction occurred because the parent sought to recover individually for medical bills she incurred on the minor's behalf. Thus, the damages she sought to recover were not the minor's, but hers alone. See, e.g., Coleman v. Audubon Insurance Co., 572 So.2d 352 (La.App. 1 Cir.1990), writ denied, 576 So.2d 31 (La.1991); Christophe v. Department of Health and Hospitals, 95-398 (La.App. 3 Cir. 10/4/95), 663 So.2d 289; Veillion v. Fontenot, 96-1075 (La.App. 3 Cir. 3/12/97), 692 So.2d 639, writ denied, 97-0932 (La.5/16/97), 693 So.2d 801.
The case sub judice stands in stark contrast to the McFarland situation. Only the child's medical damages are here under consideration. The contributory negligent parent, Aucoin, did not bring suit individually; she brought suit as tutrix to recover on behalf of her minor child medical damages that belonged solely to the child. Where the parent merely brings suit as tutor or tutrix to recover medical expenses that belong to the child, the parent's recovery is not personal. See, e.g., Pazereckis v. Thornhill, 462 So.2d 296 (La.App. 1 Cir.1984); Jefferson v. Costanza, 628 So.2d 1158 (La.App. 2 Cir. 1993); and Rollins for Rollins v. Concordia Parish School Board, 465 So.2d 213 (La.App. 3 Cir.1985). Therefore, Amber could invoke the benefits of La.Civ.Code art. 2324(B) and institute suit through her tutrix Aucoin. Under article 2324(B), Amber, who was free from fault, is entitled to recover fifty per cent of her damages, including medical expenses, from DOTD. Therefore, the court of appeal erred as a matter of law in reducing Amber's medical damages award by the degree of fault attributable to Aucoin.

DECREE
For the foregoing reasons, the judgment of the court of appeal is reversed and set aside on the issue of reduction of medical damages, and the judgment of the trial court is reinstated to that extent. Otherwise, the decision of the court of appeal is affirmed.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
*69 MARCUS, J., dissents and assigns reasons.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
KIMBALL, J., subscribes and additionally concurs for additional reasons assigned by LEMMON, J.
JOHNSON, J., dissents.
TRAYLOR, J., dissents and assigns reasons.
LEMMON, Justice, subscribing to the opinion and assigning additional concurring reasons
I write separately only to express a slightly different reasoning for reversing the appellate court's reduction in recovery of the medical expenses incurred on behalf of the minor.
The court of appeal reduced the recovery by the degree of the mother's comparative fault because the medical bills incurred on behalf of the child were "the responsibility of and recoverable by the parent." 96-1047 (6/20/97) at p. 19. The apparent reasoning is that since the mother becomes obligated to pay the medical bills of the minor who had no contractual capacity, only the mother has the right of action under La.Code Civ. Proc. art. 681 to recover those damages, and the mother's recovery of her damages therefore should be reduced under La. Civ.Code art. 2323 by the degree of her contributory negligence.
The reasoning of the court of appeal failed to take into account the difference between the contributory negligence of the tort victim under La. Civ.Code art. 2323 and the comparative fault of co-tortfeasors under La. Civ. Code art. 2324B, and is at odds with the basic concept of solidary liability among cotortfeasors (which existed at the pertinent time).
Solidary liability is based on the theory that (1) a tort victim should be made whole by the tortfeasor who caused the victim's injuries and (2) when there is concurring fault by two or more tortfeasors without whose concurrent substandard behavior the injuries would not have occurred, each blameworthy tortfeasor should be responsible to the innocent tort victim for the whole (or, after the 1987 amendment to La. Civ. Code art. 2324B, for one-half) of the victim's injuries, although the tortfeasors as between themselves are entitled to contribution or indemnity based on the respective degrees of fault.
Solidary liability between co-tortfeasors is applicable in the present case. As to the minor's general damages, everyone agrees that the mother is only a representative of the tort victim asserting a right of action that actually belongs to the child who would be the plaintiff except that she lacks procedural capacity. Both co-tortfeasors are therefore solidarily liable to the estate of the minor tort victim for at least fifty percent of her general damages.
The result should be no different for the medical expenses incurred on behalf of the minor just because the mother may be personally liable to the health care providers for payment of the medical bills. These bills are really a debt of the minor's estate, and the mother is primarily a representative of the minor's estate in asserting the claim against DOTD (although the mother also may be personally liable to the health care providers).[1]
This case is complicated by the fact that the mother was both a tort victim and a cotortfeasor. As to the mother's own injuries, she was a tort victim whose contributorily negligence under La. Civ.Code art. 2323 limits her recovery as a tort victim to the degree of the tortfeasor's fault (irrespective of any claims by other tort victims against one or both at-fault parties). As to the minor's injuries, however, the mother was a co-tortfeasor whose liability was governed by Article 2324, and the minor was the true tort victim whose recovery, governed by Article 2323, was not reduced because the minor was *70 free from fault. The mother's fault as a tortfeasor simply cannot be imputed to the minor to make her, in effect, contributorily negligent.[2]
Although the mother was technically "damaged" because she became legally responsible to third parties (health care providers) for medical expenses incurred by the minor (who did not have the capacity to become contractually liable to the health care providers), she still appeared in the minor's action as a plaintiff only in a representative capacity. Article 2323, which pertains to the reduction of the plaintiff-tort victim's recovery by the degree of contributory negligence, is therefore not applicable to this representative claim. The minor, who was free from fault, should suffer no reduction in the recovery of any of her damages. It is the minor who suffered the injuries and who has needed, and will need in the future, medical treatment for those injuries. In the event of the mother's death or insolvency, the minor's estate (being enriched by recovery of general damages against DOTD) ultimately will be liable for payment of medical expenses to the health care providers, and the minor's recovery of these expenses from either co-tortfeasor should not be reduced unless the minor herself was contributorily negligent.
In summary, the fault of the tortfeasormother is not relevant to the damages claim of the minor tort victim who was not at fault and whose recovery is not mandated for reduction by Article 2323, which governs the contributory negligence of the plaintiff-tort victim. The mother's fault is only relevant to the rights and liabilities of the co-tortfeasors to each other under Article 2324B, which governs the comparative fault of solidary co-obligors.
MARCUS, Justice, dissenting.
I dissent from the majority's holding that the condition of Greenwell Springs Road at the site of Aucoin's accident created an unreasonably dangerous condition to the motoring public. Despite its purported reaffirmation of the holding in Myers v. State Farm Mutual Automobile Insurance Co., 493 So.2d 1170 (La.1986), the majority nevertheless seems to impose liability on DOTD for its failure to bring an old highway up to current standards. I disagree and would not hold DOTD liable for plaintiffs' injuries under the circumstances of this case.
Being of this opinion, it is not necessary for me to reach the issue of the reduction of medical damages. Nevertheless, I feel compelled to express my disagreement with the majority's holding that the contributory negligence of a tortfeasor, who is also the parent of a minor victim, does not reduce the damages for medical expenses which may be recovered by the minor.
La. Civ.Code art. 227 imposes on parents a duty to support, maintain, and educate their children. Encompassed within this duty to support and maintain, is a parent's legal responsibility to pay for medical expenses incurred by his or her minor child. This obligation garners support from the fact that an unemancipated minor does not have the legal capacity to contract. La. Civ.Code art. 1918. Consequently, when a child incurs medical expenses, the parent is the liable party and thus the proper party to recover in a suit for such damages.
Under circumstances in which the parent is also a tortfeasor, La. Civ.Code art. 2323 necessarily reduces the amount of medical expenses which the parent may recover by the percentage of that parent's negligence. This reduction takes place regardless of whether a parent has instituted suit in her own name or as the tutrix of her minor child. Contrary to the opinion of the majority, the procedural posture assumed by a parent does not alter the fact that the primary right of action for medical expenses incurred by an unemancipated minor is vested in the parent, the party liable for those expenses. Hence, even in cases where the parent has filed suit on behalf of the minor child, the child is entitled to recover no more than his parent *71 would have been entitled to recover if separate suits had been brought.
In the instant case, Aucoin (as a parent) was and continues to be liable for medical expenses incurred by her minor child. Thus, Aucoin is the proper party to recover any award for such damages. Because Aucoin was found to be 85% at fault in causing her child's injuries, however, La. Civ.Code art. 2323 requires a concomitant reduction in the amount of damages that can be recovered for medical expenses arising out of those injuries.
TRAYLOR, Justice, dissenting.
The trial court committed legal error in finding DOTD liable in this case. This court has held that DOTD's failure to reconstruct the state's highways to meet modern standards does not establish the existence of a hazardous defect. Myers v. State Farm Mut. Automobile Ins. Co., 493 So.2d 1170, 1173 (La.1986). The majority first states that it agrees with that holding, then finds that three conditions, each of which is attributable to DOTD's failure to reconstruct Greenwell Springs Road to modern standards, create a hazardous defect.
The majority seeks to distinguish Myers by stating that the "[plaintiff] has not suggested that Greenwell Springs Road be constructed to meet modern standards." Op. at 66-67. Indeed, the majority found that DOTD did not have a duty to reconstruct the highway to modern standards, but rather DOTD had a duty to maintain the "off roadway area" in accordance with modern standards. This is a distinction without a difference. How might DOTD "maintain" the highway and its environs in accordance with modern standards without first reconstructing the highway to those same standards.
The majority found that DOTD's failure to maintain the slope of the ditch at its planned 3:1 slope by allowing the slope to deteriorate to 1.43:1 at the point of the accident was the "significant factor which caused the accident," even after pointing out that all the evidence indicated that even the planned 3:1 slope would not have prevented the accident. Op. at 68. DOTD's failure to maintain the slope cannot be the "significant factor" in causing the accident if the accident would have occurred regardless. In fact, DOTD's failure to maintain the slope cannot be considered a factor at all, because perfect maintenance would have resulted in the same accident. The only reasoning which would result in a finding that DOTD is liable for failure to maintain the slope is that DOTD had a duty to reconstruct the road to the 4:1 AASHTO conforming slope and either failed to do so or did so and allowed the slope to deteriorate beyond recoverability. The Myers Court, which the majority quotes with approval, held that DOTD does not have that duty.
The majority further found that the "horizontal clearance" between the roadway and the tree the vehicle struck was substandard and was a factor in the accident. Again, the Myers Court found that the existence of a tree substantially the same horizontal distance from the roadway was not unreasonably dangerous. Again, the only way for DOTD to have avoided liability due to the existence of the tree would have been to clear the right of way to AASHTO standards.
The majority also found that the width of the shoulder was a factor in the accident. How else might DOTD widen the shoulder without performing a major reconstruction? In short, Myers addressed each of the factors delineated by the majority: the shoulder, the horizontal clearance, and the fore slope ratio of the ditch bank, and determined that because it would be physically and financially impossible to bring all the state's highways up to modern standards, DOTD had no duty to reconstruct the highways to those standards. Myers, 493 So.2d at 1172-73. Since DOTD had no duty to reconstruct Greenwell Springs Road to modern standards, it follows that it had no duty to maintain the road to those standards.
The majority's opinion places DOTD in the same untenable position it was in pre-Myers. Therefore, the State should either be ordered to reconstruct all highways to AASHTO standards or to abide by the rule of law set out by this Court in Myers, the only fiscally realistic position.
*72 The majority further finds that Article 2324B is substantive and therefore is not retroactive. In support of this argument, the majority states, citing to Keith v. United States Fidelity & Guaranty Co., 96-2075 (La.5/9/97), 694 So.2d 180, that "[l]aws establishing new rules, rights, and duties, or changing existing ones are substantive." Op. at 69. Keith itself cites to Segura v. Frank, 93-1271 (La.1994), 630 So.2d 714, in which the Court determined the retroactivity of La.Rev.Stat. § 1386. Justice Kimball wrote for a unanimous Court:
While we agree with the [court of appeal] that a "cause of action is a vested property right which is protected by the guarantee of due process," we find retroactive application of [§ 1386] would disturb neither plaintiff's vested right in a cause of action against the party or parties legally liable for their injuries. From the plaintiffs' standpoint, the amendment alters the order of recovery from defendants without disturbing the right to recover. In other words, the amendment merely prescribes a method for enforcing the plaintiffs rights to recover. Segura, 630 So.2d at 723-4 (citations omitted, emphasis in original).[1]
Here, as in Segura, the plaintiff's right to recover 100% of her damages has not been impaired. The plaintiff may recover 15% of her damages from DOTD and the remaining 85% from her mother.[2] The statute merely allocates from whom the damages are to be collected. The statute in no way impairs a cause of action or any other vested property right, as would be the case if the statute had capped plaintiff's recovery or immunized DOTD. The plaintiff has the right to recover all her damages, the fact that she may not at present is not due to the retroactivity of the statute, but rather to the peculiar facts of this case.
The majority further holds that the change was substantive because "the amendment resulted in changing the amount of damages recovered." Op. at 69 (emphasis added). Adoption of this view means that decisions regarding the retroactivity of statutes are now to be determined based on the facts of the case before the court. For instance, were Defendant A and Defendant B, two solvent solidary defendants, found to be 85% and 15% liable respectively, the damages recovered would be 100% regardless of whether the plaintiff collected 50% from each or 85% from A and 15% from B. Similarly, if neither A nor B were solvent, the amount of damages recovered is again unchanged. The plaintiff would collect 0% from both. In the two hypotheticals, because the amount recovered is unchanged no matter which statute is applied, the majority's reasoning results in finding that the amendment is procedural and therefore retroactive. The proper test should be whether an amendment results in changing the amount recoverable, rather than the amount actually recovered. As discussed above, the plaintiff's recoverable damages are unchanged. As a result, I would find that the amendment to Article 2334B is procedural in nature and, thus, retroactive.
NOTES
[*] Victory, J., not on panel. Rule IV, Part 2, § 3.
[1] The trial court also found that DOTD negligently failed to prioritize the proper maintenance. Prioritizing would presumably earmark the roadway to receive funding for necessary improvements. Because we find the off roadway conditions presented an unreasonable danger to motorists, we pretermit a discussion concerning the prioritization issue.
[2] Highway 16, classified as an "arterial route" pursuant to La.R.S. 48:191, received federal money for the reconstruction project. Greenwell Springs Road, classified as a "collector route" pursuant to section 191, was not eligible for federal aid.
[3] At the time of the accident, La.Civ.Code art. 2324(B) provided:

If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages.
[4] The 1996 amendment of 2324(B) provided in pertinent part:

If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person....
[5] At least three appellate court cases have correctly noted that 1996 Act 3 made a substantive change to La.Civ.Code 2324(B). Jones v. Hawkins, 29,914 (La.App.2d Cir. 4/9/98), 708 So.2d 749; Moore v. Safeway, Inc., 95-1552 (La.App. 1 Cir. 11/22/96), 700 So.2d 831, 855; Thornhill v. DOTD, 95-1950 (La.App. 1 Cir. 6/28/96), 676 So.2d 799, 810.
[1] Indeed, if the mother had been killed in the accident and a grandparent had become the representative plaintiff as a tutor, surely the recovery of the minor's medical expenses would not have been reduced. It is difficult to see a logical difference in the present case just because the representative plaintiff was a co-tortfeasor.
[2] If the mother and father had been married and living together with the child, the father would have been the proper party plaintiff under La. Code Civ. Proc. art. 4501, and the mother's fault as a tortfeasor clearly would have been irrelevant to the non-negligent child's recovery through a representative plaintiff.
[1] The Segura Court later found that the amendment affected the defendants' substantive rights and was, therefore, not retroactive. Art. 2324B provides relief to some defendants rather than impairing their substantive rights.
[2] Although at present the plaintiff is barred from suing her mother for the mother's 85% share of her damages, she may, if she wishes, bring suit upon reaching her majority. La.Rev.Stat. § 9:571; La.Civ.Code art. 3469.