GUIDRY, J.
|gThe State of Louisiana, through the Department of Transportation and Development (DOTD), appeals the trial court’s judgment, rendered in conformity with a jury verdict, finding it liable for the wrongful death of a driver who was fatally injured when he drove off the roadway into a roadside ditch. The driver’s former spouse answered the appeal on behalf of her minor son seeking an increase in the damage award.
FACTS AND PROCEDURAL HISTORY
Late in the evening on January 22, 2002, Hiram Justin Shilling (Justin) sustained fatal injuries when he hit a culvert after driving off of Louisiana Highway 1031, commonly known as Hatchell Lane, into an adjacent roadside ditch to avoid a collision with another motorist who had imprudently swerved into his lane of travel. After settling claims against the other motorist who had caused the accident, Justin’s ex-spouse, Jonelle Shilling (Jonelle), filed a wrongful death suit against DOTD on behalf of her son, Christian Taylor Shilling (Christian), born of her marriage to Justin. Jonelle later amended the petition to add a survival action claim. In answer to both petitions, DOTD denied liability for Justin’s death, asserting the sole fault for the accident resulting in Justin’s death was attributable to the negligent motorist who had caused him to drive off the roadway.
Prior to trial, Jonelle filed a motion in limine to prohibit DOTD from referring to or introducing any evidence regarding alleged drug use by the decedent or collateral sources of payment, which motion the trial court took under advisement. After hearing additional argument from counsel on the motion, the trial court granted the motion in limine at the commencement of the jury trial, which was held on May 18-21, 2004. Following the trial on the merits, a unanimous jury found DOTD liable and apportioned it with ninety percent *98 fault in the wrongful death of Justin. The remaining ten percent was apportioned to the ^negligent driver who had caused Justin to leave the roadway. The jury awarded Christian a total of $250,000 in general and special damages on the wrongful death and survival action claims, and the trial court rendered judgment in conformity with the jury’s verdict.
In response to the jury’s verdict, DOTD filed a motion for judgment notwithstanding the verdict (JNOV), or in the alternative, a motion for new trial, asserting that the jury’s apportionment of fault was contrary to the law and the evidence. Jonelle filed a motion for a partial JNOV seeking to increase the jury’s award for wrongful death damages and to reduce the award for medical and funeral expenses to the amount actually proven at trial. Jonelle also filed a separate motion to tax costs in this matter. Following a hearing on the motions, the trial court rendered judgment denying DOTD’s motions for JNOV, and in the alternative, for new trial. The trial court partially granted Jonelle’s motion for partial JNOV, reducing the jury’s award of medical and funeral expenses. The trial court also partially granted Jonelle’s motion to tax costs.
It is from the liability determinations of the jury’s verdict that DOTD suspensively appeals. Jonelle answered the appeal disputing the amount the jury awarded Christian for the wrongful death of his father.
ASSIGNMENTS OF ERROR
DOTD assigns the following as error on appeal:
1.The Judgment of the Trial Court containing the Jury Verdict assessing liability and 90 percent fault against DOTD was manifestly erroneous because the plaintiff failed to meet the burden of proof required by LSA-R.S. 9:2800.
2. The Trial Court’s supplemental jury charge, in response to the jury’s second interrogatory during its deliberations, prejudiced DOTD and interdicted the fact-finding process
3. The Judgment of the Trial Court awarding $145,000.00 in loss of financial support damages to plaintiff was manifestly erroneous.
|44. Trial Court erred when it granted plaintiffs motion in limine prohibiting DOTD from introducing any evidence of Justin Shilling’s drug use to defend against plaintiffs loss of financial support claim.
In answer to the appeal, Jonelle alleges that the jury’s award of $70,000 in wrongful death damages was abusively low, and as such, the trial court erred in denying the motion for a partial JNOV to increase the award.
STANDARD OF REVIEW
For an appellate court to reverse a trial court’s factual findings, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court or, even if' a reasonable factual basis exists, that the record as a whole establishes that the finding is clearly wrong. Irion v. State ex rel. Department of Transportation and Development, 98-2616, p. 10 (La.App. 1st Cir.5/12/00), 760 So.2d 1220, 1229, writ denied, 00-2865 (La.11/13/00), 773 So.2d 727. Thus, the reviewing court must do more than simply review the record for some evidence that supports or controverts the trial court’s finding. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly erroneous. Stobart v. State, through Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
*99 DISCUSSION

LIABILITY OF DOTD

In its first assignment of error, DOTD basically argues that Jonelle failed to prove all the elements of her claim.[1] A plaintiff may recover damages from DOTD, a public entity, under a theory of negligence based on La. C.C. art. 2315 or |Ra theory of strict liability based on La. C.C. art. 2317, as limited by La. R.S. 9:2800.[2] The burden of proof is the same under either theory, that is: (1) DOTD had custody of the thing that caused plaintiffs damages; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time; and (4) the defect was a cause-in-fact of plaintiffs injuries. Netecke v. State, DOTD, 98-1182, p. 7 (La.10/19/99), 747 So.2d 489, 494; Brown v. Louisiana Indemnity Company, 97-1344, p. 3 (La.3/4/98), 707 So.2d 1240, 1242.
DOTD does not dispute its custody and ownership of Hatchell Lane, which was added to the state highway system in December 1939; rather, it argues that because no roadway defect caused Justin to drive off of Hatchell Lane, all fault for the accident resulting in Justin’s death should be attributable to the negligent motorist who caused Justin to the leave the roadway. We disagree, finding no manifest error in jury’s findings..
In Aucoin v. State, Department of Transportation and Development, 97-1938 (La.4/24/98), 712 So.2d 62, the plaintiff and her minor daughter sustained |fiinjuries when she swerved her car off of the roadway to avoid hitting a dog. Unfortunately, a narrow shoulder of approximately one-foot width and a ditch of a very steep slope abutted the road on which she was traveling. On entering the ditch, the plaintiffs vehicle traveled 123 feet before hitting a tree that was growing on the back slope of the ditch in DOTD’s right of way. Aucoin, 97-1938 at 2, 712 So.2d at 64. In that case, the court’s decision did not turn on whether any defects in the roadway caused the accident or presented an unreasonable risk of harm, but rather its determination that DOTD was liable stemmed from defects off of the roadway, but still within DOTD’s right of way. As noted by the court in Aueoin, “DOTD owes a duty to *100 maintain its right of way in a condition that does not present an unreasonable risk of harm.” Aucoin, 97-1938 at 4, 712 So.2d at 65.
In this case, according to the testimony of both DOTD and Jonelle’s expert witnesses, current American Association of State Highway and Transportation Officials (AASHTO) guidelines provide that for a roadway such as Hatchell Lane, with a traffic flow of over 6,000 vehicles per day, the minimum shoulder width is eight feet on each side of the roadway and that the slope of an adjacent ditch should be no greater than a 3:1 ratio (three feet across for every one foot vertical drop in slope). The shoulders on Hatchell Lane in the area of the accident were only five feet wide and the slope of the adjacent ditch was between a 1:1 and 2:1 ratio, making it a very steeply sloped ditch. Dr. Joseph David Blaschke, DOTD’s own expert in the areas of highway traffic and roadway design, acknowledged the dangerous condition that existed off of'the roadway:
Certainly, if the driver goes off the roadway and encounters the ditch, yes, there is a danger there. There’s a potential for a significant damages [sic] and injuries as we experienced in Mr. Shilling’s case, unfortunately. But the roadway itself as it exist [sic] — as long as you stay on the roadway or slightly off the roadway, the roadway’s fine. It’s not unreasonably dangerous. You exit far enough off the roadway and encounter the ditch, then you have some danger.
17Similar to the roadway in Aucoin, Hatchell Lane’s admission into the state highway system predated the promulgation of the minimum design standard guidelines issued by AASHTO, which have been held to apply only to new construction or the reconstruction of existing roadways. See Temple v. State ex rel. Department of Transportation and Development, 02-1977, p. 7 (La.App. 1st Cir.6/27/03), 858 So.2d 569, 576, writ denied, 03-2116 (La.11/7/03), 857 So.2d 501. However, as observed in Aucoin, “[w]hile failure to adhere to AASHTO standards may not in itself attach liability, whether DOTD has conformed to those standards is a relevant factor in determining the ultimate issue of whether a roadway is dangerous.” Aucoin, 97-1938 at 7, 712 So.2d at 66.
Testimony by experts for both Jonelle and DOTD established that because of the steepness of the adjacent ditch, once a motorist enters the ditch, it is impossible for the motorist to recover, and thus the ditch was defective. Dr. Olin K. Dart, offered by Jonelle as an expert in the fields of traffic engineering, highway design, traffic safety and accident reconstruction, opined that increasing the width of the shoulder by at least three feet could have increased Justin’s chances of recovery without encountering the steeply-sloped ditch; however, he insisted that the best solution for improving the safety of Hatchell Lane was to combine increasing the width of the shoulder with decreasing the slope of the ditch. In absence of increasing the shoulder width and decreasing the slope of the ditch, Dr. Dart’s alternative recommendation was to make the drainage subsurface to increase the safety of motorist traveling in that area of Hatc-hell Lane. DOTD’s own expert, Dr. Blasch-ke admitted that based on the highway safety standards in place at the time of the accident, Hatchell Lane was substandard.
Whether an unreasonably dangerous defect caused the plaintiffs damages is a finding of fact and an appellate court may not overturn a jury’s finding of fact in absence of manifest error or unless clearly wrong. Temple, 02-1977 at 10, 858 So.2d at 577-578. Considering the evidence presented, we cannot say the jury *101 was manifestly erroneous in concluding that the reduced shoulder width and the steeply sloped ditch abutting Hatchell Lane presented an unreasonable risk of harm. Nor do we find any merit in DOTD’s contention that it had no notice of the defective condition of the roadway. Noel Kent Israel, a road design engineer administrator for DOTD accepted by the trial court as an expert in civil and design engineering, testified that in 1988, DOTD widened Hatchell Lane reducing the shoulder to five feet on each side of the roadway. Further, James Delaune, the former mayor of Denham Springs testified that the second highest number of accidents in the city occurred on Hatchell Lane during his tenure in office from 1991 to 2002. He also testified that five or six people were killed on Hatchell Lane during his term of office.
Thus, we find, as did the court in Au-coin, that although the road surface of Hatchell Lane was in good condition, the dangerous condition posed by the substandard shoulder and the non-recoverable slope was sufficient to make DOTD liable for injuries sustained by a driver, such as Justin, who travels off the roadway due to a sudden emergency. As observed by the Aucoin court, “[t]he combination of more than one dangerous condition was allowed to accumulate by DOTD, rendering this off roadway area unreasonably dangerous to the motoring public. Under these circumstances, DOTD has a duty to maintain this off roadway area so it does not pose an unreasonably dangerous condition to the motoring public, notwithstanding that the roadway at issue is an old highway.” Aucoin, 97-1938 at 8, 712 So.2d at 67. Accordingly, we reject DOTD’s assertion that the jury erred in finding it liable for the wrongful death of Justin.

Supplemental Jury Instruction

In its second assignment of error, DOTD contends that the trial court erred in giving the following supplemental jury instruction when queried by the jurors as lato the proper application of the principles of comparative fault: “[i]n apportioning fault among various parties, you may consider the relative percentages each party’s fault played, if any, in the harm sustained in the accident.” DOTD contends that this supplemental charge prejudiced the jury and interdicted the fact-finding process by identifying fault with harm and not with negligence.
When assessing an alleged erroneous jury instruction, it is the duty of the reviewing court to evaluate such impropriety in light of the entire jury charge to determine if it adequately provides the correct principles of law as applied to the issues and whether they adequately guided the jury in its deliberation. Duzon v. Stallworth, 01-1187, p. 278 (La.App. 1st Cir.12/11/02), 866 So.2d 837, 858, writs denied, 03-0589, 03-0605 (La.5/2/03), 842 So.2d 1101, 1110. An appellate court must exercise great restraint before overturning a jury verdict on the suggestion that the jury instructions were so erroneous as to be prejudicial. Bell v. Whitten, 97-2359, p. 7 (La.App. 1st Cir.11/6/98), 722 So.2d 1057, 1061.
We find no merit in DOTD’s argument since the language of the instruction comports with that of La. C.C. art. 2323, wherein the apportionment of fault of all tortfeasors is mandated. Article 2323 states, in pertinent part: “[i]n any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined.” Comparing the language of the supplemental jury charge with that of the statute, we find that the trial court correctly expressed the principles of law applicable to the jury’s determination of *102 comparative fault and apportionment of liability in this case. We thus reject this assignment of error.

Exclusion of Evidence

In its final two assignments of error, DOTD argues that based on the trial court’s failure to allow it to present evidence regarding Justin’s alleged drug use, Imthe jury committed manifest error in awarding Christian $145,000 for loss of financial support. For the following reasons, we reject these assignments of error.
The Louisiana Code of Evidence provides that evidence of other crimes, wrongs, or acts is generally inadmissible to prove the character of a person in order to show that he acted in conformity therewith. La. C.E. art. 404(B). In the matter before us, DOTD sought to admit evidence of the decedent’s prior drug use in order to prove that his past conduct in using-drugs would adversely effect his future earning potential. The trial court, however, found that the prejudicial effect of admitting such evidence would outweigh the possible evidentiary value-of the evidence, if any. Having reviewed the proffered testimony relative to Justin’s drug use, we agree.
On proffer, DOTD offered many fact witnesses who testified to either witnessing Justin use illegal and prescription drugs or having obtained such drugs from him. Further, in conjunction with the testimony of those fact witnesses, DOTD proffered the testimony of Dr. Vincent Wilson as an expert in the fields of pharmacology and toxicology. Dr. Wilson opined that based on the type of drugs ingested by Justin, the decedent likely suffered from extensive brain damage, which typically manifests itself in the disruption of sensory perception or as the loss or impairment of working memory and which is key to information processing, simple problem solving, and logical reasoning. Dr. Wilson admitted that his testimony was speculative regarding the degree of impairment Justin possibly suffered, since he could only generally opine that Justin suffered some impairment without having performed specific testing and assessment of Justin’s abilities before and after drug usage. Further, the probative value of the excluded testimony is discredited by testimony from Justin’s family, co-workers, and supervisor indicating that he was a reliable, hard-working employee, who did not |1Tmiss work and who often worked overtime to earn additional money to support his family, even up to the time of his death, despite his history of prior drug use.
Thus, in light of the speculative nature of Dr. Wilson’s testimony, whose dire predictions of permanent impairment relative to Justin’s drug use were not corroborated by Justin’s ability to function and provide support for himself and his family before his untimely death, we find that the trial court properly disallowed such evidence as overly prejudicial.

Wrongful Death Damages

In answer to the appeal, Jonelle challenges the jury’s award of $70,000 for the wrongful death of Justin, arguing that the amount awarded was abusively low. The elements of damage for a wrongful death action are loss of love, affection, companionship, support and funeral expenses. Gibson v. State, Department of Transportation and Development, 95-1418, p. 14 (La.App. 1st Cir.4/4/96), 674 So.2d 996, 1006, writs denied, 96-1862, 96-1895, 96-1902 (La.10/25/96), 681 So.2d 373, 374. At the time of his father’s death, Christian was four years old. There was testimony by friends and family members, as well as photographs introduced into evidence, attesting to the close, loving relationship between Justin and Christian. Witnesses testified that Justin took Christian hunting, fishing and camping, and that *103 he generally just loved spending time with his son.
Nevertheless, at the time of his father’s death, Christian’s parents, Justin and Jo-nelle, were divorced and living in separate households with Jonelle having primary custody of Christian. Michael Speziale, Justin’s best friend, testified that following Justin’s divorce, he spent quite a bit of time with Justin “because Christian was with Jonelle most of the time, so during the hunting season, me and Justin probably saw each other four or five days out of the seven days of the week.” Judy Spez-iale, Michael’s mother, testified that although she frequently saw Justin following his divorce from Jonelle, she only occasionally saw Justin 112with Christian. As she explained, “[i]t wasn’t often, but as I said, you know, it would just be on weekends and things that he would have the child.”
There was also testimony by a clinical social worker, Anita Compton Evans, who evaluated Christian on February 11, 2002, less than a month following his father’s death. Ms. Evans evaluated Christian at the request of Jonelle and Christian’s paternal grandmother, Mary Shilling, who were concerned about Christian acting out, exhibiting angry outbursts, growing quiet and hitting Jonelle following Justin’s death. After meeting with Christian both individually and with his mother and grandmother for approximately 45 minutes, Ms. Evans’ clinical observation of the child was of a somber, unsmiling, quiet, four-year-old, who appeared to be sad, quiet, and somewhat withdrawn. Ms. Evans did not see Christian again until November 4, 2003, when Jonelle again asked that he be evaluated for acting out, which Ms. Evans concluded was in response to Jonelle having recently given birth to another child. Ms. Evans last visit with Christian was on November 11, 2003. Although she diagnosed Christian as suffering from bereavement and adjustment disorder, her overall impression of Christian was of a handsome and intelligent young boy who has the tools and mental ability to progress and succeed in life. She conceded upon questioning that her diagnosis of adjustment disorder was relative to her prior meetings with Christian and was not definitive of Christian’s emotional state at the time of trial.
DOTD offered the testimony of Megan Ciota, a psychologist accepted by the court as an expert in clinical and neuropsycholo-gy. Ms. Ciota found Christian to be on target in academics and intellectual functioning. When she questioned Christian regarding the death of his father, Christian’s response was that he did not remember a lot because he was really little when his father died. Ms. Ciota testified that according to her research, children who lose a parent and go through the grieving process are quite similar to children who have not suffered a loss in |1sthe long run; the loss of a parent by such children is not associated with depression or anxiety in adulthood. She disagreed with Ms. Evans’ diagnosis of adjustment disorder, explaining that it is improper to diagnosis adjustment disorder during the period of bereavement. Ms. Ciota’s overall prognosis for Christian was very good for a healthy and adjusted future.
As previously noted, generally wrongful death damages include loss of support and funeral expenses in addition to damages for the loss of love, affection and companionship. Considering the evidence presented and that the jury awarded Christian $145,000 for lost financial support, $11,620.85 for funeral and burial expenses, in addition to the $70,000 specifically designated as wrongful death damages, we cannot say that the total sum awarded Christian for the wrongful death of his father was abusively low.
*104 CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court finding DOTD liable for the wrongful death of Justin Shilling. The costs of this appeal in the amount of $2,682 are to be borne equally by the parties.
AFFIRMED.
KUHN, J., concurs.

. In its first assignment of error, DOTD alleged that the jury erred in finding it liable for the wrongful death of Justin and in its apportionment of fault. In briefing this assignment of error, however, DOTD only discussed the liability finding. Thus, based on DOTD’s failure to brief that portion of its assignment of error alleging that the jury manifestly erred in apportioning fault, we deem this portion of the assignment of error to be abandoned in accordance with Uniform Rules, Courts of Appeal, Rule 2-12.4.

. Prior to its amendment by 2003 La. Acts, Nos. 725 and 1077, the applicable version of La. R.S. 9:2800 provided, in pertinent part:
A.A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of building within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
[[Image here]]
E. "Public entity” means and includes ... political subdivisions and the departments, offices, agencies, boards, commissions, in-strumentalities, officers, officials, and employees of such political subdivisions....