960 So.2d 1013 (2007)
Lottie MORGAN
v.
CITY OF BATON ROUGE and Parish of East Baton Rouge.
No. 2006 CA 0158.
Court of Appeal of Louisiana, First Circuit.
April 4, 2007.
Rehearing Denied May 11, 2007.
*1014 Kris A. Perret, Law Offices of Ossie Brown, Baton Rouge, for Plaintiff-Appellee Lottie Morgan.
E. Wade Shows, Mary E. Roper, Gwendolyn K. Brown, Baton Rouge, for Defendant-Appellant City of Baton Rouge/Parish of East Baton Rouge.
Before: CARTER, C.J., PARRO, GUIDRY, DOWNING and McCLENDON, JJ.
PARRO, J.
In this personal injury case, the City of Baton Rouge/Parish of East Baton Rouge (City/Parish) appeals a judgment ordering it to pay Lottie Morgan damages in the amount of $7,804.45, plus legal interest and court costs, for injuries she received when she fell at the edge of a sidewalk under the care and custody of the City/Parish. For the following reasons, we reverse.

BACKGROUND
On June 15, 2000, Ms. Morgan was getting out of the passenger side of her father's car in a handicapped parking space where he had pulled up to allow her to exit. As she stepped off the sidewalk to walk around the car, a piece of wood serving as an expansion joint or spacer board between the sidewalk and the curb became stuck in her sandal, causing her to fall. The location of her fall was on the east side of the 200 block of St. Louis Street, immediately adjacent to a crosswalk spanning the street between the Baton Rouge City Court and the East Baton Rouge Parish Governmental Building. When she fell, Ms. Morgan skinned and bruised her knee, bruised her elbow, and strained her neck.
Ms. Morgan filed suit against the City/Parish, alleging that the sidewalk and curb area where she fell was within its care, custody, and control, and that due to the high volume of pedestrian traffic, the City/Parish had actual or constructive knowledge of the defective condition. She claimed the defect in the sidewalk created an unreasonably hazardous situation, which the City/Parish had failed to remedy. The City/Parish admitted having maintenance responsibility for the area where Ms. Morgan fell, but denied that the expansion joint, sidewalk, or curb was defective or that the City/Parish had any actual or constructive knowledge of any problems at the site. In the alternative, it asserted Ms. Morgan's negligence as a contributing cause of her fall. Immediately before the trial, Ms. Morgan stipulated that the City/Parish had no actual knowledge of any defect in the sidewalk, and the City/Parish stipulated that it had not done any maintenance work at the accident site for a period of two years before her fall, and had done no redesign work at that site for the five years preceding her fall.
One of the witnesses at trial was Captain Gary Fontenot, a Baton Rouge City Police officer, who testified concerning his investigation of Ms. Morgan's accident. After she reported what had occurred, he walked with her to the scene and saw a piece of the expansion joint completely removed from the sidewalk. Captain Fontenot said Ms. Morgan told him she was *1015 stepping down off the curb and the expansion joint was sticking up, causing her to trip on it and fall. Photographs introduced in connection with his testimony showed a weathered strip of wood about 2-3 feet long lying on the sidewalk near the site of her fall. Other photographs showed the gap between the sidewalk and the curb where the piece of wood had been. The location was right at the edge of the handicapped parking spot, where the curb started to curve around to the entrance to the City Court parking lot. Captain Fontenot also identified a photograph showing bruising on Ms. Morgan's right knee.
Ms. Morgan testified that on the day of her fall, she was going to the governmental building. She rode with her father in his car, which had a "handicap tag," and he pulled to the curb in the handicapped parking spot on the City Court side of the street, so she could get out. She planned to cross the street at the crosswalk and enter the governmental building. Ms. Morgan said she got out of the passenger side of his car, intending to walk around the front of it. When she tried to step off the curb, she felt something that went through her shoe, causing her to lose her balance; she fell onto the street, injuring her elbow and knee. Ms. Morgan said she could not avoid falling, "because I couldn't get that, that piece of wood. It was, like, stuck in my shoe." She said it was the "skinny piece of wood that separates the concrete," and observed that it was rotten. After the fall, the piece of wood was still stuck in her shoe until she removed it. Ms. Morgan said she did not see the piece of wood before she fell, because she was not looking down, but was looking where she was going as she began to cross the street. After the fall, she went into the governmental building, reported what had happened, and cleaned herself up. She confirmed Captain Fontenot's testimony about investigating the accident site with her. Because her leg was extremely swollen the next day, Ms. Morgan went to a hospital emergency room for treatment. The doctor examined her, administered a tetanus shot, and gave her some non-narcotic pain medication for her leg and neck complaints. She identified photographs of her right leg and knee, showing the bruising and swelling, and stated the bruised area remained discolored for several months. She returned to work after a week, and the knee injury fully resolved in about three months. However, Ms. Morgan said she still experiences occasional neck pain. Her medical records were introduced without objection. She said that because the site of her fall was a high-traffic area, and especially since it was in the handicapped zone, it needed to be properly maintained, and further stated that there was nothing about the spacer board to draw her attention to it before trying to step off the curb.
On cross-examination, Ms. Morgan explained that she had been going to the governmental building every week for two months before the fall. Each time she went, she rode with her father, who always parked at or near the spot in the handicapped parking area where she fell. In all those visits, she had not noticed a problem with the expansion joint. Ms. Morgan said she never looked down as she walked, but always looked ahead. She acknowledged it was a clear, sunny day, and that if she had glanced down, there was nothing blocking her view of the spacer board. She testified that she was wearing sandals, which was how the broken piece of board was able to lodge in her shoe through the sandal opening.
Ms. Morgan's attorney asked the court to take judicial notice of the high volume of pedestrian traffic on the street and sidewalk area between the two courthouses. The City/Parish attorney acquiesced in *1016 that request. Following the bench trial, the court rendered judgment in favor of Ms. Morgan, ordering the City/Parish to pay her $7,500 in general damages and $304.45 in medical expenses, plus legal interest and court costs. The judgment was signed on November 24, 2005, and this appeal followed.

APPLICABLE LAW
A plaintiff may recover damages from a public entity, such as the City/Parish, under a theory of negligence based on Louisiana Civil Code article 2315 or a theory of custodial liability based on Article 2317, as modified or limited by Article 2317.1 and Louisiana Revised Statute 9:2800.[1] The applicable portion of Article 2317.1 states:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
Louisiana Revised Statute 9:2800, before its amendment by 2003 La. Acts, Nos. 725 and 1077, provided, in pertinent part:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
B. Except as provided for in Subsection A of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
C. Constructive notice shall mean the existence of facts which infer actual knowledge.
The burden of proof is the same under either negligence or custodial liability. The plaintiff must prove: (1) the public entity had custody of the thing that caused the plaintiffs damages; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) the public entity had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time; and (4) the defect was a cause-in-fact of the plaintiffs injuries. See Shilling ex rel. Shilling v. State ex rel. Dept. of Transp. and Dev., 05-0172 (La. App. 1st Cir.12/22/05), 928 So.2d 95, 99, writ denied, 06-0151 (La.4/24/06), 926 So.2d 541.
The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding *1017 only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993).

ANALYSIS
The City/Parish admits the sidewalk and curb area where Ms. Morgan fell was within its care, custody, and control, and that it had maintenance responsibility over the site. Moreover, there is no dispute concerning the fact that the wooden expansion joint caught in her shoe and caused her to fall. However, the City/Parish alleges the trial court erred in finding it had constructive notice of the alleged defect and in concluding that the sidewalk posed an unreasonable risk of harm. In the alternative, should this court accept the trial court's findings on those issues, the City/Parish contends the trial court erred in failing to assess any fault to Ms. Morgan for her own negligence.
Although the trial court's oral reasons for judgment do not refer to any of the facts underlying its conclusions, we must determine whether those conclusions are supported by the record. Therefore, we examine the evidence to determine whether there is a reasonable factual basis in the record for the findings of the trial court, and whether the record further establishes that those findings are not manifestly erroneous.
Addressing first the issue of constructive notice, we find no evidence to provide a reasonable factual basis for the court's finding that the City/Parish had constructive notice of the situation that caused Ms. Morgan's fall. Her own testimony established that she had been alighting from her father's vehicle in this "same parking spot" or very near it every week for two months before she fell, and never saw any problem with the sidewalk, the curb, or the expansion joints in that area. Asked if she had noticed that the wood was protruding in any way prior to attempting to step off the curb, she said, "No, because, I mean, I was coming to this governmental building every week." Ms. Morgan said that there was nothing about the spacer board to draw her attention to it until "afterwards." After she fell, when she looked at the piece of wood that had stuck in her shoe, she saw that it "was rotten." Captain Fontenot said only that the expansion joint, "didn't look new," which is consistent with the City/Parish stipulations concerning the length of time since it had repaired or redesigned this area.
The photographs in evidence show a large paved sidewalk area and curb in front of the City Court, with expansion joints running across the sidewalk at regular intervals and in the groove between the sidewalk and the curb. The wooden spacers in the grooves between the sidewalk and curb, including the piece that came loose, show signs of weathering. However, all along the length of the sidewalk and curb shown in the photographs, there are no visual differences in elevation between the sections and no protruding or uneven spacers. In short, there is nothing in the overall appearance of the area to indicate that the wooden spacers were broken or likely to break loose from the grooves in which they were installed. As Ms. Morgan testified, there was nothing to draw her attention to this area or to provide notice of a potential problem to her or anyone else walking there. This is equally true for any City/Parish personnel who might traverse this area. Moreover, despite the fact that this crosswalk and immediately adjacent area are used by hundreds of pedestrians on a daily basis, there is no evidence of other falls at or near this busy site. Nor is there any evidence that this particular spacer board had broken or was protruding before Ms. Morgan's attempt to step off the curb on the day she *1018 fell. In the two years preceding Ms. Morgan's fall, there was nothing at this site that required repair by the City/Parish.
Constructive notice requires the existence of facts from which actual knowledge can be inferred. The facts in this case simply do not satisfy this statutory mandate, and the trial court's conclusion to the contrary is clearly wrong. Having determined that the trial court's conclusion on this necessary element of Ms. Morgan's claim was manifestly erroneous, it is unnecessary to address the remaining assignments of error.

CONCLUSION
The judgment of November 24, 2005 is reversed. All costs of this appeal are assessed to Ms. Morgan.
REVERSED.
GUIDRY, J., dissents and assigns reasons.
DOWNING, J., dissents for the reasons assigned by Judge GUIDRY.
CARTER, J., concurs.
GUIDRY, J., dissenting.
For an appellate court to reverse a trial court's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court or, even if a reasonable factual basis exists, that the record as a whole establishes that the finding is clearly wrong. Irion v. State ex rel. Department of Transportation and Development, 98-2616, p. 10 (La.App. 1st Cir.5/12/00), 760 So.2d 1220, 1229, writ denied, 00-2365 (La.11/13/00), 773 So.2d 727. Thus, the reviewing court must do more than simply review the record for some evidence that supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989).
There was evidence in the record that would support a finding of constructive notice: the testimony of the police captain and the plaintiff regarding the weathered condition of the expansion joint and the pictures that support that testimony. Jurisprudence has held that a public entity can be held to have constructive notice of a defect if the defective condition existed for such a period of time that it should have been discovered and repaired if the public body had exercised reasonable care. Hammons v. City of Tallulah, 30,091, pp. 4-5 (La.App. 2d Cir.12/10/97), 705 So.2d 276, 280-281, writs denied, 98-0407, 98-0440 (La.3/27/98), 716 So.2d 892, 894. On the record before us, applying the applicable standard of appellate review, I cannot say that the trial court's finding was clearly wrong. See Stobart, 617 So.2d at 882. Accordingly, I respectfully dissent.
NOTES
[1] The legislation enacting LSA-C.C. art. 2317.1, effective April 16, 1996, abolished the concept of strict liability governed by prior interpretations of LSA-C.C. art. 2317. A more appropriate term now for liability under Articles 2317 and 2317.1 and LSA-R.S. 9:2800 might be "custodial liability," which is now based on a finding of actual or constructive knowledge. See Granda v. State Farm Mut. Ins. Co., 04-1722 (La.App. 1st Cir.2/10/06), 935 So.2d 703, 707 n. 5, writ denied, 06-0589 (La.5/5/06), 927 So.2d 326.